JESSE GEARHART et ux., Appellants, v. DES MOINES RAILWAY COMPANY, Appellee.

No. 46786.

214

FEBRUARY 5, 1946.

Havner & Powers, of Des Moines, for appellants.

Bradshaw, Fowler, Proctor & Fairgrave, Harold S. Thomas, and R. H. Work, all of Des. Moines, for appellee.

HALE, J.—This is an action by Jesse Gearhart and his wife, Lucille Gearhart. The husband assigned his claim for damages to his wife. The action arose out of an injury suffered by Lucille Gearhart on November 6, 1943, between the hours of nine and ten p. m. She was a passenger on defendant's curbliner and got off at the southeast corner of Sixth and Euclid Avenues in Des Moines, which cross each other at right angles. The curbliner was headed north on Sixth Avenue but its route was west from the intersection on Euclid. When plaintiff left the car at the southeast corner of the intersection the traffic lights to the north were red and she walked across Sixth Avenue to the southwest corner

of the intersection. Then when the traffic lights changed for north-and-south traffic she proceeded north across Euclid Avenue from the southwest corner of the intersection toward the northwest corner, following the line of traffic opened by the green light. She claims that she was within twelve or fifteen feet of the north curb of Euclid Avenue, and in plain view of the driver of the curbliner, who drove the bus in a left-hand turn west on the north side of Euclid Avenue. Plaintiff followed the green light, and, as she asserts, without any knowledge on her part that the curbliner was approaching, was struck by the left front corner of the vehicle, knocked down and dragged on the pavement and severely injured, necessitating confinement in a hospital for three months, surgical operations, and care and treatment by a physician after her release from the hospital. She alleges negligence of defendant and lack of contributory negligence on her part. She claims medical expense of $345, hospital expense of $466.25, and injury to clothing of $100, all of which amounts were conceded by defendant to be correct, and $400 expense incurred in providing care for her household and two children while disabled, making a total of $1,311.25. She also asks judgment for damages and expense incurred in the sum of $4,000.

There was denial by defendant and specific denial of negligence and of the claim of lack of contributory negligence by plaintiff. The jury returned a verdict for plaintiff in the amount of $1,311.25. The court at the conclusion of plaintiff's testimony withdrew her plea as to the doctrine of last clear chance and her proffered instructions thereon.

Plaintiff bases her appeal on the following grounds: (1) failure of the court to admit the hospital records offered in evidence by her (2) failure of the court to instruct the jury on the doctrine of last clear chance (3) failure of the court to set aside the verdict of the jury and grant a new trial by reason of the inadequacy of the verdict (4) that the court was in error in giving certain instructions hereinafter referred to and (5) that the court was in error in withdrawing division (e) of paragraph 12 of the petition. Defendant has appealed on the ground that the trial court was in error in failing to

direct a verdict for defendant at the close of plaintiff's testimony and at the close of all the testimony, and failure to sustain defendant's motion for judgment notwithstanding the verdict. The evidence in relation to these assigned errors will be referred to hereafter under separate assignments.

■ I. Dr. Howard Gray testified as to the extent of plaintiff's injuries. Plaintiff offered also the hospital records and as foundation therefor called Mrs. Mabel Clark, an employee of the hospital, who testified she assisted Sister Mary Louise in her work of keeping the records. She identified the records of the hospital in connection with the case of Lucille Gearhart, including the history on the first sheet, the personal history and physical examination on the next, and the operative sheets and nurses' notes at the back of the record. She testified that the records were made in the usual and ordinary course of business and were part of the records of Mercy Hospital in Des Moines, and as to the manner in which the chart is ordinarily made up; that it is sent to the floor with the patient; that the record indicates that the physician or interne makes a physical and personal history and signs it; that the records indicate the temperature, pulse, and respiration. The witness did not make any part of the records but testified as to the manner in which they were made and that they were made by the nurses and doctors in charge of the patient. A nurse as witness testified as to entries she had made on the record, that they were made at the time of admission of the patient to the hospital, that they were correct and true so far as they relate to facts, and the notations on the front side of the page were the day nurse's notes. The witness identified some of the entries on the sheets as made by other nurses, but some she could not identify, and testified that some of the nurses who made the entries could not be produced. On objection the court refused to admit these records in evidence, both as an entirety and as to separate items.

The question, therefore, is, Are the records of a public hospital, duly identified, admissible in evidence to show the condition of the patient as bearing on the amount of pain

and suffering? This is a question which has never been ruled on by this court but it has arisen in many jurisdictions and the courts are divided on the question of admissibility.

In 75 A. L. R. 378, in the annotations to Lund v. Olson, 182 Minn. 204, 234 N. W. 310, 75 A. L. R. 371, the question is fully reviewed and the cases listed which hold both for and against the admissibility of hospital records. The editorial note states:

"There is apparently some conflict among the courts as to whether such evidence is admissible at all; there is even more confusion as to the reason. It is obvious that such evidence can only be admitted under some exception to the hearsay rule, and that the proper foundation must be laid for bringing the case within the particular exception. Nevertheless, in many instances such evidence has been excluded without the court clearly stating whether it was for the lack of a proper foundation, and without intimating whether such evidence is admissible in any event. Consequently, some difficulty has been experienced in grouping the cases from the various jurisdictions under appropriate rules, as well as in reconciling cases from the same jurisdiction. It is believed that in many of the cases where such evidence was excluded, in the absence of some other assigned reason, it was for the reason that a proper foundation had not been laid."

In 120 A. L. R. 1124, in the annotations to Clayton v. Metropolitan L. Ins. Co., 96 Utah 331, 85 P. 2d 819, 120 A. L. R. 1117, additional cases are cited and reviewed. The editor says that the conflict still exists, as does the confusion as to the reason for the admission or exclusion of such evidence. Many of the cases where the question has arisen have occurred in states where hospitals are required by statute to keep records, being considered as public documents. It would require an undue extension of this opinion and be of no value to undertake to review even a part of these conflicting pronouncements of the courts of the various states. The majority rule seems to favor the admission of such records when properly identified and the proper foundation is laid.

If admissible, these records would constitute one of the exceptions to the hearsay rule,·such as dying declarations, statements of fact against 'interest, books of account, declarations about family history, etc. It is apparent that hospital records cannot be governed by the same rules or principles as applied to books of account nor admitted under our statute relating to such entries. In VI Wigmore on Evidence, Third Ed., 36, section 1707, the author strongly favors admissibility, stating that the medical records of patients at a hospital organized on a modern plan should be placed under the exception to the hearsay rule and should be admissible either on identification of the original by the keeper or offer of the certificate of a sworn copy. He states that the reasons for admissibility of evidence of such exceptions are the necessity and circumstantial guarantee of trustworthiness which are the bases for the admission of all such exceptions. The necessity of admission is that the calling of all the attending physicians and nurses who have co-operated to make the record even of a single patient would be a serious interference with the convenience of hospital management. There is a circumstantial guarantee of trustworthiness:

"* * * for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions, occurring in the routine work of a large staff, are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand. And the power of the Court to summon for examination the members of the recording staff is a sufficient corrective, where it seems to be needed and a bona fide dispute exists."

In referring to the lack of opportunity for cross-examination, it is stated that, "common sense and experience have

from time to time pointed them out as practically adequate substitutes for the ordinary test'' by cross-examination; and further, in generalizing, the author states:

"* * * there is ample authority in judicial utterances for naming the following different classes of reasons underlying the exceptions:

"a. Where the circumstances are such that a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed;.

"b. Where, even though a desire to falsify might present itself, other considerations, such as the danger of easy detection or the fear of punishment, would probably counteract its force;

· "c. Where the statement was made under such conditions of publicity that an error, if it had occurred, would probably have been detected and corrected." V Wigmore on Evidence, Third Ed., 204, section 1422.

We are satisfied that the above rule laid down by the author, that such records are admissible, is the correct one; that such records are not only supposed to be true but must be true in order that the safety, and even the life, of patients whose care is entrusted to physicians, nurses, and employees of the hospital may be assured, and for the further reason that in records such as this no reason exists for any fraudulent misrepresentation as to the condition of the patient. A party to an action is entitled to whatever information may be properly adduced for the court and the jury, and where such information can be obtained under circumstances that indicate that it is true, and no reason exists to indicate that it was false, the interests of justice require that such evidence should be admitted. The rule of admission applies with full force to a general public hospital where the records are for the benefit of all persons concerned in the care of the various patients. There seems to be no reason why they should not be admitted and become a part of the record in judicial proceedings growing out of or concerned with the disability of the patient. In this instance we are satisfied that the chart and hospital report, or records, should have been admitted.

To the objection made by defendant that every material need essential to plaintiff's proof was testified to and the record was purely cumulative in character we say that we know of no rule which prevents the admission of testimony of more than one witness to facts in a lawsuit. It is true the doctor testified as to the condition of plaintiff and treatment in the hospital, but plaintiff was entitled to the additional testimony shown by the day-to-day record of her condition.

As to the further objection that there was no proper foundation laid, we are satisfied, as indicated by what we have heretofore said, that the proof that these were the regular charts of the patient, kept and used by the hospital in her care and treatment, was sufficient to warrant their admission.

■ II. At the conclusion of plaintiff's testimony the court withdrew from the jury various allegations of negligence, including division (e) of paragraph 12 of the petition embodying the doctrine of last clear chance and plaintiff assigns this as error under division 5. If plaintiff was entitled to have the theory of last clear chance submitted to the jury, then the court was in error; but, if the court was correct in holding that under the evidence the doctrine of last clear chance did not apply, then there was no error in the withdrawal, so that divisions 5 and 2 of plaintiff's assignment of error may be considered together. Was the court correct in refusing to submit this theory of the case to the jury? In division 2 of her assigned errors plaintiff complains that the trial court erred in failing to embody in its instructions plaintiff's requested instructions 5 and 6 pertaining to the doctrine of last clear chance.

It is the opinion of the majority of this court that the doctrine of last clear chance should have been submitted to the jury. If so, the court was not correct in its rulings. The majority hold that there is sufficient circumstantial evidence to justify a finding that the bus driver, notwithstanding his denial, saw plaintiff and knew her peril in time, by the exercise of ordinary care, to have avoided injury. There is no dispute that there may be a finding of negligence under the last-clear-chance doctrine on circumstantial evidence; nor is there any dispute in the testimony that the area in question

was well lighted. One witness says visibility was one hundred per cent on the night of the collision. There were several passengers on the curbliner and one of them, Florence Wooldridge, according to her testimony, saw plaintiff a substantial time before the collision, stating that the plaintiff was plainly visible to her when first seen. Similar testimony was given by Jo Ann Rogers, Norma Johns, and Mary Johnson, passengers on the bus. There was no evidence that there was any vehicle near the intersection except the bus and a truck driven by one Wolf, which truck was some one hundred thirty-five feet west on Euclid Avenue, and plaintiff was the only pedestrian crossing Euclid at the time.

Testimony of the bus driver was:

"I had looked out the [left] side window as I was crossing the intersection beginning to make the turn. * * * as I rounded the curve I looked out the side window."

On cross-examination he testified:

"I was looking right out of the window at the time I was turning and looking to my left all the time. * * * I was looking to my left when I started. * * * I was right up against the windows marked 'O' and 'X' [referring to an exhibit]. I could see through these windows, both 'O' and 'X,' all the time I was crossing from the southeast to the northwest corner. * * * I was looking ahead and at the side all the time until I heard the thud, but I never saw Mrs. Gearhart."

The window marked "O" was in the front of the bus; the one marked "X" was at the front end of the left side.

It was stipulated that Sixth Avenue is sixty-six feet wide at this point; Euclid is seventy feet wide west of the intersection and eighty feet wide east of Sixth.

There was evidence that the bus could have been stopped within a very short distance. On direct examination the driver said:

"I was traveling about four miles an hour. The curbliner did not move over three or four feet after the impact with Mrs. Gearhart. * * * I stopped immediately."

On cross-examination this witness testified:

"* * * I could have stopped the bus within three or four feet." Another witness testified:

"I heard a thud at about the left-hand corner of the bus. It went about a foot after the thud and stopped right away."

Two witnesses saw plaintiff as the bus made the turn and thereafter, and others about the time the front part of the bus was entering the pedestrian lane, if not in it. The truck driver, according to his testimony, saw plaintiff in peril before the collision, when he was about one hundred thirty-five feet west of the intersection, and attempted to attract the bus driver's attention by flashing his lights and sounding his horn. A witness for defendant, Brady, standing at the southwest corner of the intersection, saw plaintiff before she fell, "in the act of toppling," about halfway between the front of the bus, and the front wheel (five and one-half feet).

With the exception of the bus driver and Brady, who had just come out of a store, all witnesses who were in a position to see the plaintiff did see her. If the driver had seen plaintiff as soon as such witnesses did the collision could have been avoided by ordinary care. The driver had the best opportunity to see plaintiff in a place of peril, and he testified that he looked vigilantly. It was his legal duty to maintain a lookout. Lynch v. Des Moines R. Co., 215 Iowa 1119, 1127, 1128, 245 N. W. 219.

In view of the other testimony the jury was not bound, under the circumstances, to believe the bus driver's testimony that he did not see plaintiff. Murphy v. Quick Tire Service, Mo. App., 47 S. W. 2d 202, 206; Davidson v. Vast, 233 Iowa 534, 538, 10 N. W. 2d 12, 15, and cases cited.

It is further held that a finding of actual knowledge of plaintiff's perilous position may be based on the driver's duty to maintain a lookout and the fact that he had a clear field of vision. Carr v. Inter-Urban R. Co., 185 Iowa 872, 879, 171 N. W. 167, and cases cited; Wilflin v. Des Moines City Ry. Co., 176 Iowa 642, 645, 646, 156 N. W. 842; Lynch v. Des Moines R. Co., supra; Groves v. City of Webster City, 222 Iowa 849, 856, 270 N. W. 329.

In view of this holding it naturally follows that the jury should have been instructed as to the doctrine of last clear chance, not necessarily in the language of the proposed instructions but explaining the plaintiff's rights and defendant's duty under that theory, and the court was in error in striking the said division (e) of paragraph 12 from plaintiff's petition.

III. Plaintiff excepts to the court's refusal to grant her motion for new trial. The grounds of the motion were that the damages were inadequate and made no provision for pain and suffering and failure of the court to instruct the jury as to the law applicable. Since there must be a reversal and a new trial, we think it unnecessary to rule upon this.

The claim of plaintiff is that the verdict of the jury was in the exact amount of the three items of expense admitted by defendant to be correct, and in addition, the $400 charge for services of plaintiff's daughter. Plaintiff claims this indicates there was no allowance for pain and suffering, while defendant denies this inference by arguing that no one can say just what the jury allowed for expenses of the daughter's services, whether it was the full allowance of the $400 claimed or was a partial allowance for such item and a partial allowance for pain and suffering.

There is no question, under our decisions, that a new trial may be granted for inadequate damages and such is allowed under Rule 244 of the Rules of Civil Procedure, but, as stated, we need not consider this objection further. Had the hospital records been admitted, with a detailed account of the patient's progress and condition, the verdict might have been such that there could be no controversy on this point.

IV. Plaintiff contends that the court should have given her requested instruction 4—that is, instructed the jury that defendant had admitted the hospital and nurses' bills and the reasonable value of the clothing destroyed. However, the record was before the jury and neither party contends the verdict did not cover such items. The court fully instructed as to the various items claimed which plaintiff would be entitled to recover in event the jury found defendant liable. There was no reversible error in this respect.

V. On defendant's appeal it is claimed that the court

was in error in authorizing the jury to find plaintiff free from contributory negligence on the showing only that she was walking on an unmarked crosswalk with a green traffic light in her favor and without testimony that she looked and listened; and that the court erred in overruling defendant's motion for directed verdict based on the ground that plaintiff had failed to carry her burden by showing that plaintiff was free from contributory negligence. This claim of error was preserved throughout the record, in the motion for directed verdict at the close of all the evidence and defendant's motion for judgment notwithstanding the verdict, all of which were overruled.

Defendant, in appealing from this action of the court, recognizes the rule that the question of contributory negligence is generally for the jury but claims that in a case of this kind it was the duty of plaintiff to look and listen. That is, that she could not carry this burden without some testimony as to the use of her senses of sight and hearing and that such testimony was not supplied by her testimony that she was on the crosswalk and walking with the green light. It is unquestioned that the green light was in her favor and that she had the right of way, but defendant urges that the pedestrian's right is preferential only, and not absolute, citing various cases, including Horwitz v. Eurove, 129 Ohio St. 8, 193 N. E. 644, 96 A. L. R. 782; Switzer v. Baker, 178 Iowa 1063, 160 N. W. 372; Rolfs v. Mullins, 179 Iowa 1223, 162 N. W. 783; Dougherty v. McFee, 221 Iowa 391, 265 N. W. 176; and 5 Am. Jur. 664, section 293.

The question resolves itself into this: Was the plaintiff, while crossing the intersection, free from contributory negligence in following the green light, with no showing in the record that she looked and listened? The statute, section 5019.06, Code of 1939, gives the right of way to the person following the green light, and a driver crossing an intersection or turning on an intersection is bound to recognize that right. In the second case of Swan v. Dailey-Luce Auto Co., 225 Iowa 89, 277 N. W. 580, 281 N. W. 504, as well as in the third case, 228 Iowa 880, 293 N. W. 468, the ruling of

this court in part was that a person crossing the street is not required to anticipate negligence on the part of another but is justified in ' assuming that the other will not violate the law. Citing 45 C. J. 954, and various cases.

"Plaintiff was not required to keep a *constant* lookout for cars from both directions. This is self-evident because he cannot .look both ways at the same time. A pedestrian is only required to exercise ordinary care and whether he did so is ordinarily a question for the jury." Swan v. Dailey-Luce Auto Co., 225 Iowa 89, 94, 277 N. W. 580, 583.

The Swan cases did not involve a question of lights but did involve the question of contributory negligence as failing to keep a lookout. See, also, Lawler v. Gaylord, 233 Iowa 834, 10 N. W. 2d 531, and cases cited; Lawson v. Fordyce, 234 Iowa 632, 12 N. W. 2d 301, and cases cited, holding that it is not necessary to keep a constant lookout. This latter case cites, among others, to the same effect, Lawler v. Gaylord, supra. See Robertson v. Carlgren, 211 Iowa 963, 234 N. W. 824.

This rule is laid down in 5 Am. Jur. 761, section 453:

"In accordance with the well-settled rule that a pedestrian starting to cross a street at a crossing, with the traffic signal in his favor, has the right of way over traffic until he reaches the opposite curb, it is clear that a pedestrian who does not continually look for approaching vehicles as he makes such crossing is not thereby rendered contributorily negligent in the event of an accident."

See, also, 5 Am. Jur. 760, section 452, and notes and cases cited.

In most of the Iowa cases there was evidence that at some time prior to the collision plaintiff had looked before crossing the intersection. In Rogers v. Jefferson, 224 Iowa 324, 275 N. W. 874, and Rogers v. Jefferson, 226 Iowa 1047, 285 N. W. 701, plaintiff saw defendant's car approaching from the west when plaintiff was about five hundred feet south of the intersection but did not look again. In both cases the question of contributory negligence was held to be for the jury.

Defendant assails the ruling of this court in the case of Roe v. Kurtz, 203 Iowa 906, 210 N. W. 550, a case which has frequently been followed in other cases, including the Rogers cases, claiming that it is bad law and should be overruled. We do not agree. In most of the cases cited there was some evidence of plaintiff's looking before the accident, yet in others plaintiff looked only after he approached the intersection and before entering it and was held to be not guilty of contributory negligence. We can see little difference between looking for the approach of vehicles at a considerable time prior to the time when the collision might be prevented and not looking, when if plaintiff had looked she would have seen nothing to warrant fear of an approaching danger. Plaintiff was entitled to rely upon the presumption that any approaching vehicle would follow the law and the driver of a vehicle within an intersection or crossing an intersection must proceed with regard to the rights of pedestrians crossing the street. There can be no question about this duty devolving upon the drivers of vehicles, and it applies where the pedestrian has the right of way, whether it be preferential or absolute. In the instant case, had plaintiff looked at the time she started across the intersection she would not have discovered any car approaching the crossing which she was entering. After leaving the curbliner she crossed to the southwest corner of the intersection. When the light controlling north-and-south traffic turned green she started from the southwest corner and the curbliner started in the same direction and each proceeded north on parallel routes until the curbliner changed to the west on the east-and-west avenue. Had plaintiff looked to the right she would have seen the curbliner, not traveling toward her but proceeding in the same direction she was going. As stated, she was not required to look at all times but only to use ordinary care and caution. Thus, if she had looked when entering the intersection she would have seen nothing to cause her to anticipate a collision. It is a well-known fact that a curbliner is not limited to a fixed line of travel, as is a streetcar, but may and does proceed over the street to the right of the center line thereof. It does not travel on a track so that the rails might to some extent have

warned plaintiff that the car was to turn. Also, the driver of the curbliner in turning and passing to the left was proceeding against the ordinary stream of traffic and would be held to such care as to avoid pedestrians proceeding with the green light. We believe the pedestrian has a right to rely upon the driver's observing this rule. We are not holding that a person correctly following the route of travel with a green light in his favor may not be guilty of contributory negligence. Such person might be heedless, or travel with such a lack of caution as amounts to negligence; and he may not loiter or interrupt travel in such a way as to render himself guilty of contributory negligence.

Under the evidence in this case the question of lack of care by plaintiff was not one of law but was for the jury to determine and the ruling of the court was correct.

For the reasons stated, in plaintiff's appeal the case is reversed and remanded, and in defendant's appeal affirmed.— Reversed and remanded on plaintiff's appeal; affirmed on defendant's appeal.

All JUSTICES concur.