**STATE of Iowa, Appellee,**

**v.**

**Lewis Lopez FISHER, Jr., Appellant.**

**No. 53400.**

Supreme Court of Iowa.

June 23, 1970.

Thomas L. Root, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., and G. Douglas Essy, Asst. Atty. Gen., for appellee.

LeGRAND, Justice.

Defendant was indicted for the forcible rape of Rosemary Kiefer in violation of section 698.1, Code of Iowa. He was tried, convicted, and sentenced to a term of 40 years in the penitentiary at Fort Madison, Iowa. He appeals from that judgment, and we reverse and remand for a new trial.

The nature of the appeal makes it unnecessary to detail the facts surrounding the event. Defendant assigns two errors which he claims entitle him to a new trial and a third which, if the first two are unavailing, is urged as cause for reduction of his sentence. They are: (1) misconduct on the part of the jury in considering out-of-court evidence prejudicial to defendant; (2) error in the admission of hospital records; and (3) imposition of an excessively severe sentence.

We consider only the assignment dealing with the admission of hospital records, since it is determinative of this appeal and since our conclusions as to the others would not be helpful on retrial of this case.

Before discussing the circumstances surrounding the admission of the disputed hospital report, we point out the importance of this evidence. While there is considerable testimony placing defendant at the scene of the alleged crime, there is little to corroborate Miss Kiefer's testimony concerning sexual intercourse except that furnished by the laboratory report attached to the hospital record. We deem this an important part of the State's case.

Immediately following the alleged rape, the complaining witness was examined at Jennie Edmundson Hospital by Dr. Milton M. Rowley, who was on duty there as a hospital physician covering the emergency room. In the course of the examination, he took several vaginal smears, which were then sent to the laboratory on instructions from Dr. Richard Smith, the physician in charge at the hospital that night. The laboratory tests were run by Dr. M. H. Kulish.

Neither Dr. Smith nor Dr. Kulish appeared as a witness nor did any administrative employee of the hospital testify concerning the manner in which records are prepared and preserved as part of the hospital files.

At the trial Dr. Rowley produced the report and stated he had obtained it from the hospital the previous day. It consists of two sheets. The first discloses nothing of importance, and no objection to that portion was raised. The second page, taped to the first, is the laboratory report signed by Dr. Kulish. It contains the following statement, "At 6:50 A.M. on June 6, 1968 from Mrs. Judy Clark, R. N. at Jennie Edmundson Memorial Hospital, [I received] a slide container with two glass slides * * * indicated as being from this patient [Rosie Kiefer]. Two smears are stained, one by the crystal

violet and the other by the methylene blue technique. Each shows numerous spermatozoon present." The report is signed by M. H. Kulish, M. D., pathologist.

This report, introduced as Exhibit 5, was admitted under section 622.28, Code of Iowa, which provides in part as follows:

"Any writing or record, whether in the form of an entry in a book, or otherwise, * * * offered as memoranda or records of acts, conditions or events to prove the facts stated therein, shall be admissible as evidence if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness, and if the judge finds that they are not excludable as evidence because of any rule of admissibility of evidence other than the hearsay rule. * * *"

■ Defendant's objection to Exhibit 5 was limited to the laboratory report. The complaint was that Dr. Rowley, the only witness vouching for the exhibit, "is not the custodian of the records of Jennie Edmundson Hospital; no showing the whereabouts of these records, where he obtained them." While this objection could have been more specific, we believe it sufficiently raised the issue of the preliminary proof necessary to authenticate a hospital record before its admission under section 622.28, Code.

The only issue raised concerns the mechanics by which the laboratory report became and remained part of the hospital rcords justifying its later use to establish "the facts stated therein." We limit our discussion accordingly.

■ Our present section 622.28 is a relatively new business records statute which became effective in 1961. It replaced our prior shop-book record rule. Its purpose was to liberalize the circumstances under which written memoranda, reports, and other data may be admitted into evidence without the necessity of producing each person who contributed information to those records or who had any part in assembling them.

■ The statute has been before us on several occasions, in both civil and criminal cases, and we have attempted to accord it the broad, liberal interpretation it was intended to have.

In doing so, however, we must also recognize the importance of those safeguards which assure the integrity of such evidence and which were relied upon to make it admissible as an exception to the hearsay rule in the first place. This is particularly true in criminal cases, where some courts have even argued the rule is inapplicable because it violates a defendant's constitutional right to be confronted by the witnesses against him. State v. Tims, 9 Ohio St.2d 136, 224 N.E.2d 349, 351. See also 40 Am.Jur.2d, Hospitals and Asylums, section 43, page 883. While we have held it equally appropriate in civil or criminal trials, we have always insisted on proof of the dependability of the record-keeping process before permitting the use of records or other material under the sanction of section 622.28.

■ As pointed out in State v. Anderson, Iowa, 159 N.W.2d 809, 814, 815, in order for evidence to be admissible under this section the trial court must find (1) that the record was made in the regular course of business; (2) that it was made at or about the time of the act, condition or event recorded; (3) that the source of information from which the record was made and *the method and circumstances of its preparation were such as to indicate its trustworthiness;* and (4) that the record is not excludable as evidence because of any rule of admissibility of evidence other than the hearsay rule.

We recognized there, too, that the trial court has considerable discretion in deter-

mining the admissibility of such evidence. In the present case, however, we find no evidence which authenticates the "method and circumstances" under which this report was compiled and preserved. Unless we are to now say section 622.28, Code, eliminated the necessity for such proof, we must hold the laboratory report attached to Exhibit 5 was improperly received and that its admission was prejudicial error.

Historically the old shop-book rule insisted every person who made an entry or who otherwise contributed to a record must testify before it could be received as evidence. As business operations grew more and more complex, this unwieldy system became increasingly impractical. To meet the exigencies of modern business, some courts relaxed those rules to provide that records made in the usual course of business were themselves proof of the items contained therein if some person familiar with the records could authenticate them by describing the manner in which they were kept and could verify that they were indeed made as part of a regular business practice. Iowa was among those adopting a liberal rule with reference to the admission of business records. Olesen v. Henningsen, 247 Iowa 883, 77 N.W.2d 40. In an interesting article on the subject in 46 Iowa Law Review 276, 296, this case is described as judicially adopting a rule "as sweeping as that resulting from modern legislation." See also comment in 42 Iowa Law Review 431–434. Gearhart v. Des Moines Railway Company, 237 Iowa 213, 21 N.W.2d 569, also decided before the enactment of present section 622.28, is referred to in that same article (46 Iowa Law Review at page 300) as a "leading modern case" on the introduction of hospital records.

Subsequently our present section 622.28 was enacted, lending statutory authority to the liberal rule under which records made in the usual course of business may be used as proof of the information they contain.

We refer to these matters only to show our agreement, both before and since the adoption of our present statute, with the principle of liberalizing the use of properly authenticated business reports as evidence.

We know of no rule, however, dispensing with the necessity for first showing the reliability of the *system* under which they are made and preserved, whether admitted under court-made rules or by virtue of statutory pronouncement. In fact the more liberal the rule permitting the use of information a report contains, the more necessary to demonstrate the veracity of the method by which records are kept. It is this which helps supply the trustworthiness permitting the use of such reports as an exception to the hearsay rule.

Against this background, we find the State totally failed to establish the reliability of the report by any witness having knowledge of the record-keeping practices of the hospital or who could vouch for the manner in which such records are compiled and preserved in the regular course of business.

It cannot be said Dr. Rowley did so; yet he was the *only* witness testifying about the report. Dr. Rowley's position at the hospital is not entirely clear. He was on duty in the emergency room, apparently as an employee of the hospital. He was admitted to practice in Nebraska, but not in Iowa. Whatever his status, however, he had no duties in connection with the records of the hospital.

His testimony at best amounts to nothing more than a statement that the hospital regularly keeps records in the course of its business. But that does not authenticate *this* record.

The record must come in on the strength of what Dr. Rowley said or not at all. Yet he gave *no* testimony about the manner in which records were regularly kept; who had their custody; or the whereabouts of this record between the date of the examination and the time of trial.

Neither does his unexplained testimony that he obtained the exhibit "from the hospital" the day before trial satisfy the requirement that such evidence be vouched for by one having custody of the records or having actual knowledge of the circumstances under which they are kept.

The same is true of his testimony the report remained unaltered from its original condition. He said the record had not been changed "to his knowledge." However, he knew nothing about the report—when it was made, to whom it was delivered, by whom it was kept, or how. This total lack of information about both the preparation and safekeeping of the report made his assurance of its integrity worthless.

We are dealing with an offense carrying a possible life sentence. Important corroborative evidence of one of the elements of the crime is contained in this report. It is not unreasonable to compel the State to qualify the exhibit by the one charged with custody of the records or some other person familiar with the manner in which they are prepared and preserved. Dr. Rowley was not the one to say so.

None of our cases, either before or since the enactment of present section 622.28, Code, has relaxed the necessity for such proof.

In Gearhart v. Des Moines Railway Co., supra, 237 Iowa at page 216, 21 N.W.2d 569, we emphasize the necessity for showing the records were made in the usual course of business and are part of the records of the hospital. See also Ipsen v. Ruess, 239 Iowa 1376, 1383, 1384, 35 N.W. 2d 82, 88, and Ver Steegh v. Flaugh, 251 Iowa 1011, 1018, 103 N.W.2d 718, 723.

This general rule is recognized in VI Wigmore on Evidence, Third Ed., section 1707, where it is stated hospital records should be admitted as an exception to the hearsay rule "either on identification of the original by the keeper or offer of the certificate of a sworn copy." The annotation at 21 A.L.R.2d 776, although not dealing specifically with hospital records, includes this statement: " * * * There must apparently be some verification and authentication to make documentary evidence sought to be introduced thereunder [Uniform Business Records as Evidence Act] admissible."

In McCormick on Evidence, section 290, page 609, the author states that hospital records are generally admissible, but qualifies this by adding, "Production of a witness, having knowledge of the facts, to testify to the making of the record in the regular course of the hospital routine, and that it was the practice to make the records accurately and promptly is properly insisted on. * * *"

In 30 Am.Jur.2d, Evidence, section 950, page 75, we find this statement, "The Uniform Business Records as Evidence Act * * * specifically makes a business record competent evidence so far as relevant 'if the custodian or other qualified witness testifies to its identity and the mode of its preparation.' Thus business records to be admissible under this act must first of all be properly authenticated."

The Gearhart, Ipsen, and Ver Steegh cases were all decided prior to the 1961 change in our law, but there is nothing in section 622.28 as then enacted nor in our cases decided under it to suggest any departure from this principle. In State v. Hall, 259 Iowa 147, 159, 143 N.W.2d 318, 325, we approved the admission of the record of a long distance telephone call. In that case we said, " * * * the State called [the] manager of Northwestern Bell Telephone Company in Des Moines, who testified the records of toll calls were not under his direct supervision but were under his control; he explained how the records were made up on a timing machine which showed the time and place of the call and the number called. * * *"

We have already referred to State v. Anderson, supra, 159 N.W.2d 809, 814, 815, where this appears, "Here the officer in charge of records and identifications testi-

fied this police radio communication system * * * must preserve the messages sent and received by their two-way radio. They are preserved on a dictaphone machine, and the belts are numbered and carefully stored. * * * The officer testified that the tape had been securely stored, had not been altered in any way, and that it was an accurate and complete copy of the information on the belt offered into evidence. * * * The trial court had before it a recording of the police radio messages, and also the operator of the devices and custodian of the tapes. If it was convinced of the accuracy of the mechanical and human operations, and that proper care of the record had been exercised, its broad discretion to determine the admissibility of the evidence as relevant and trustworthy will not be disturbed upon appeal unless abuse of that discretion appears. * * *"

In Moffitt Building Material Company v. U. S. Lumber and Supply Co., 255 Iowa 765, 768, 124 N.W.2d 134, 136, we held certain proffered records to be properly admissible under section 622.28 and we said, "In the case before us the president of the plaintiff company testified to facts sufficient for the trial judge to find that the records were made in the regular course of business at or about the time of the act recorded, and that the sources of information indicated trustworthiness and that the exhibits were not excludable other than by the hearsay rule."

In Bingham v. Blunk, 253 Iowa 1391, 1396, 116 N.W.2d 447, 450, we again required authenticating testimony as to the accuracy of reports admitted into evidence.

Support for this view is found in decisions from many other jurisdictions. Wheeler v. U. S., 93 U.S.App.D.C. 159, 211 F.2d 19 (vaginal smear slides admitted upon proper foundation); Luthringer v. Moore, 31 Cal.2d 489, 190 P.2d 1 (ex-

cluded because method of preparation not shown); Western Fire & Indemnity Co. v. Bradshaw, Tex.Civ.App., 356 S.W.2d 832, 833 (record admitted when "proper predicate laid" by hospital record librarian); York v. Daniels, 241 Mo.App. 809, 259 S.W.2d 109, 123 (record admitted upon foundation testimony of custodian of hospital records); Conser v. Atchison T. & S. F. Ry. Co., Mo., 266 S.W.2d 587, 592 (nonprejudicial error in admission of hospital record without showing how made or time of preparation); Martin v. Baldwin, 215 Ga. 282, 110 S.E.2d 344, 352 (preliminary proof must show method of keeping records by one familiar with facts); Sims v. Charlotte Liberty Mutual Insurance Co., 257 N.C. 32, 125 S.E.2d 326, 329 (hospital record must be authenticated by hospital librarian or custodian of the record as to mode, time, and circumstances of preparation); Dalton v. Johnson, 204 Va. 102, 129 S.E.2d 647, 649 (report must be properly qualified by custodian of hospital records); Skillern & Sons, Inc. v. Rosen, Tex., 359 S.W.2d 298, 305 (testimony of custodian of the records held sufficient); State v. McCormack, Mo., 263 S.W.2d 344, 347 (excluded for failure to show mode of preparation); Williams v. Williams, 87 N.H. 430, 182 A. 172, 174 (excluded for lack of evidence as to method of keeping records or circumstances of their preparation). See also 40 Am.Jur.2d, Hospitals and Asylums, section 43, page 883.

■ For the reasons stated we conclude Exhibit 5, the laboratory report of Dr. Kulish, was not properly identified or authenticated as a record made in the regular course of business under section 622.28, Code; that its admission into evidence was prejudicial error; and that defendant is entitled to a new trial.

Reversed and remanded.

All Justices concur.