550 P.2d 1065

Helen **BYRNS**, Individually, and Kevin Byrns, a minor, By and Through his Mother and next friend, Helen Byrns, Appellants,

v.

**RIDDELL, INCORPORATED**, a corporation, Appellee.

No. 12541–PR.

Supreme Court of Arizona,
En Banc.

June 8, 1976.
Rehearing Denied July 13, 1976.

Jack M. Anderson, George Sorenson, Jr., and John S. Schaper, Phoenix, for appellants.

Maupin & Wilson by Donald R. Wilson and William G. Fairbourn, Phoenix, for appellee.

HAYS, Justice.

On October 2, 1970, the appellant, Kevin Byrns, received an "on-side" kick while playing football as a member of the Alhambra High School varsity football team. He fell to the ground and was thereafter struck by at least one member of the opposing team. As a result of the injuries received during that play, appellants commenced this action.

The appellants initially named the Phoenix Union High School District and other unspecified parties as defendants. The complaint was later amended, upon stipulation, adding appellee as a party defendant. Appellants' claim against Phoenix Union High School District was thereafter dismissed without prejudice by stipulation. A trial by jury was held in Maricopa County Superior Court. At the close of appel-

lants' case, the court granted appellee's motion for a directed verdict and denied appellants' motion for a new trial. An appeal was then taken to the Court of Appeals. We granted the petition for review in this matter. The decision of the Court of Appeals is vacated. *Byrns v. Riddell,* memorandum decision filed January 15, 1976.

This court must determine whether the trial court properly granted appellee's motion for a directed verdict. In order to narrow the focus of our inquiry, it is necessary to consider several areas of proof presented by the appellants, and later developed by appellee on cross-examination. We will confine our consideration of the record to that evidence which relates to proof of strict liability in tort.

In their first amended complaint, appellants allege that the helmet manufactured by appellee, a corporation involved in the manufacture and sale of football helmets nationally, was defective by design and manufacture and by reason of such defects was inherently dangerous to the user. The appellants also charged appellee with the failure to provide a warning of the defects.

Fred Rappleayea, a witness, was produced by appellants in order to prove the existence of a defect in the Riddell TK–2 helmet worn by appellant, Kevin Byrns. Rappleayea stated that the helmet was defective and unreasonably dangerous insofar as it "bottoms out" or transmits the energy of the blow to the head of the wearer without absorbing a sufficient amount of energy within the helmet cushioning system itself.

Testimony by appellants' physicians revealed that the injury to appellant's head consisted of a swelling of the right temporal lobe of the brain. One doctor testified that such an injury would result from a blow in front of the right ear and behind the right eye, or from a blow to the opposite side of the head. When asked by counsel for appellee whether a blow to the top of the head would cause an injury to

the side of the head, the doctor could draw no definite conclusion.

Rappleayea testified that the front and back portions of the TK–2 helmet were tested and did not meet a crash helmet standard known as Z90.1, which he felt was applicable to a football helmet when the application was limited to the test's impact standard. Another of appellants' witnesses, Anderson Irving, testified that the TK–2 failed the Z90.1 impact test in terms of energy-absorbing characteristics in the forehead, rear and temporal areas of the helmet.

Appellee presented evidence relating to the inapplicability of the Z90.1 standard to the testing of football helmets. Gerald Morgan, chairman of the board of the appellee corporation, stated that the Z90.1 standard is inapplicable since the test conditions do not simulate the results of an impact to the human skull. Appellee further established on cross-examination that the top of the TK–2 helmet had not been tested by appellants' experts. Mr. Rappleayea concluded that the top of the helmet was the best place to be hit from the point of view of rating the effectiveness of the suspension system.

The relevancy of the focus on the effectiveness of the top of the helmet with respect to its energy-absorbing characteristics was developed by appellee in its analysis of a moving picture film of the game, which includes shots of the accident.

Appellee argued on its motion for a directed verdict that there was no proof of a defect in the TK–2 helmet, nor was there proof that a defect in the helmet caused the injury. Support for these arguments was provided by means of the game film and the testimony of Coach Hakes. Appellee argued that the game film shows a clear top-of-helmet to top-of-helmet impact. Coach Hakes testified that the two players

hit "head-to-head." Appellee concludes that since the top of the helmet is not defective and since the film shows a blow to the top of the head, it is clear that the injury was not caused by a defect in the helmet.

The trial court found that the film clearly demonstrated that the impact was not a frontal impact, nor was it at the base, nor was it over the ears. Thus, the court stated reasonable minds could not differ as to the place of impact. In its conclusion, the trial court further held that since the strongest (top) portion of the helmet was not tested, it would be mere speculation on the part of the jury to determine that the top of the helmet was defective. The trial court therefore directed a verdict for appellee.

The law of strict liability in tort has followed a steady course of development since its early foundations in the case of *Greenman v. Yuba Power Products, Inc.,* 59 Cal. 2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963). This court, in its decision in *O. S. Stapley Co. v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968), adopted the theory of strict liability set forth in Restatement (Second) of Torts § 402A (1965). In view of the steady growth in this area of the law, coupled with the singularity of the facts in this case, a further review and analysis of the law of strict liability in tort is necessary. It is to this analysis that we first turn our attention.

The California Supreme Court in a recent decision in the case of *Cronin v. J. B. E. Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972), rejected the "requirement that a plaintiff also prove that the defect made the product 'unreasonably dangerous' . . ." a standard set forth in Restatement (Second) of Torts § 402A (1965). In *O. S. Stapley, supra,* we specifically adopted Restatement (Second) of Torts § 402A and its concept of an "unreasonably dangerous" defect, and as such rejected the California approach.*

---

* Comment (1) to the Recommended Arizona Jury Instructions, Products Liability 1 erroneously concludes that the unreasonably dangerous requirement ". . . is not a necessary factor in the Arizona decisions in which the Restatement (Second) of Torts § 402A is quoted.

The term "unreasonably dangerous" has been considered by many courts in the jurisdictions that have adopted § 402A. A recent survey of cases which considered the concept of an "unreasonably dangerous" defect states that this concept is especially effective as a means of limiting the strict tort liability doctrine "in cases in which the issue is the nature of the duty of a manufacturer with respect to safe design, or in situations in which injury does not follow as a matter of course from the defect, and in which there are serious questions as to the effect to be given harm-producing conduct or misuse on the part of the injured person." Annot., 54 A.L.R. 3d 352, 358 (1973).

The United States District Court, Eastern District of Pennsylvania, adopted the following test of "unreasonable danger": "whether a reasonable manufacturer would continue to market his product in the same condition as he sold it to the plaintiff *with* knowledge of the potential dangerous consequences the trial just revealed." *Dorsey v. Yoder Co.*, 331 F.Supp. 753, 759–760 (E. D.Pa.1971), *aff'd*, 474 F.2d 1339 (3rd Cir. 1973). The court went on to state: "And in measuring the likelihood of harm one may consider the obviousness of the defect since it is reasonable to assume that the user of an obviously defective product will exercise special care in its operation, and consequently the *likelihood* of harm diminishes." *Dorsey v. Yoder Co., supra,* at page 760. Comment (i) Restatement (Second) of Torts § 402A further defines the element of an unreasonably dangerous defect from the viewpoint of the consumer in the following language:

"The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

The New York Court of Appeals addressed itself to the issue of a manufacturer's liability for injury caused by an obvious defect in *Campo v. Scofield,* 301 N.Y. 468, 95 N.E.2d 802, affirming 276 App.Div. 413, 95 N.Y.S.2d 610 (1950), and concluded that a manufacturer "is under no duty to guard against injury from a patent peril or from a source manifestly dangerous." This position was adopted by our Court of Appeals in the case of *Maas v. Dreher*, 10 Ariz.App. 520, 460 P.2d 191 (1969). We do not subscribe to this "patent-latent" distinction in the context of a manufacturer's strict liability in tort. Its only function is to encourage patent design defects. It is interesting to note that the New York Court of Appeals has recently decided to abandon the "patent-latent" distinction in the case of *Micallef v. Miehle Co. & Miehle-Goss Dexter, Inc.*, 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (filed April 8, 1976). The obviousness of the defect is only one factor to be considered in the determination of whether the defect is unreasonably dangerous.

The court in *Dorsey, supra,* subscribed to the following factor analysis prepared by Dean Wade to determine if a defect is unreasonably dangerous:

" '(1) the usefulness and desirability of the product, (2) the availability of other and safer products to meet the same need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the danger, (5) common knowledge and normal public expectation of the danger (particularly for established products), (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings), and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.' " *Dorsey, supra,* at 760.

We must add a note of caution at this point. No all-encompassing rule can be stated with respect to the applicability of strict liability in tort to a given set of facts. Each case must be decided on its own merits. The foregoing analysis is offered as an approach to the question of whether a defect is unreasonably dangerous.

This court has a clear duty when faced with the issue of whether or not a directed verdict was properly granted.

"It is well settled that a motion for a directed verdict admits the truth of all competent evidence introduced by the party opposing the motion, including all reasonable inferences to be drawn therefrom. Such evidence must be viewed most strongly against the movant and most favorably for the opposition. If, considering all the facts and circumstances, there is a reasonable likelihood that reasonable men may reach different conclusions, the question of fact in issue is to be decided by the jury. [citations omitted]." *Reader v. General Motors Corp.*, 107 Ariz. 149, 154, 483 P.2d 1388, 1393 (1971).

The facts in this case as presented by appellant establish the possibility of a defect in the sling design of the TK–2 suspension system. This defect is established by the testimony of Irving and Rappleayea regarding a series of tests conducted by them and measured by a standard known as the Z90.1 impact test. Rappleayea further established the defect based on his experience in testing the TK–2 while employed by appellee. This evidence is sufficient to raise the likelihood that reasonable men may reach different conclusions on the issue of an unreasonably dangerous defect in the sling design of the TK–2 helmet. The "bottoming out" defect might be of a type that a reasonable consumer would not contemplate.

There is a question of fact as to the place of impact, with a resulting question of causation in terms of the relationship between the impact and the injury. There is also a question as to the possibility of a substantial change in condition caused by the addition of a face mask manufactured and installed by someone other than appellee.

"[P]laintiff has the burden of proving that the defective condition of the injury producing product was in being at the time it left the hands of the seller. . . . The plaintiffs must be permitted to rely upon circumstantial evidence alone." *Reader v. General Motors Corp., supra.* Plaintiff must also prove the relationship between the defect and the injury. "Thus, 'if there is . . . [expert] evidence of the possibility of the existence of the causal relationship together with other evidence or circumstances indicating such relationship, the finding that the accident caused the injury will be sustained.' [citation omitted]." *Kennecott Copper Corp. v. McDowell*, 100 Ariz. 276, 413 P.2d 749, 754 (1966).

We hold that appellant established the presence of a defect in the helmet at the time it left the hands of the seller to the extent that reasonable minds could reach different conclusions as to that question of fact. Furthermore, we hold that appellant provided sufficient proof that a defect caused appellant's injury. The issue of causation is one of fact for the jury to decide.

The trial court concluded that the film, as a matter of law, left no reasonable doubt as to the place of impact, thus ruling that the appellant failed to show causation between the impact and the injury. We have carefully reviewed the portion of the moving picture film which contains the "on-side" kick and cannot arrive at the same conclusion. The film is at best inconclusive on the question of the point of impact and in fact shows possible contact by two opposing players. We also note that Coach Hakes' testimony was similarly inconclusive in that he merely stated that appellant and an opposing player hit "head-to-head." The jury must be permitted to determine the issue of causation since there is a likelihood that reasonable minds could differ on the interpretation of the game film.

It was error for the trial court to direct a verdict in favor of appellee.

Reversed and remanded for further proceedings not inconsistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.