581 P.2d 1152

**Jesse R. VINEYARD and Joan E. Vineyard, husband and wife, Appellants,**

**v.**

**EMPIRE MACHINERY COMPANY, INC., Euclid, Inc., General Motors Corporation and Terex Division of General Motors Corporation, Appellees.**

**No. 1 CA–CIV 3505.**

Court of Appeals of Arizona, Division 1, Department B.

May 11, 1978.

Rehearing Denied June 19, 1978.

Review Denied July 18, 1978.

Barber, Haralson & Kinerk, P. C. by Dale D. Haralson, Tucson, for appellants.

Moore & Romley by Kenneth J. Sherk and Roger T. Hargrove, Phoenix, for appellee Empire Machinery Co., Inc.

Snell & Wilmer by John J. Bouma and Douglas W. Seitz, Phoenix, for appellees Euclid, Inc., and General Motors Corp.

OPINION

JACOBSON, Acting Presiding Judge.

The issue on this appeal from summary judgment is whether the trial court correctly found that there were no genuine issues of material fact with regard to whether a piece of heavy equipment was in a defective condition, unreasonably dangerous to the user.

The plaintiff-appellant, Jesse R. Vineyard, was involved in an accident on July 6, 1972, while operating an earth moving machine known as a scraper. This piece of equipment, a Euclid Model SS–28 Scraper, weighs approximately 20 tons and consists of a 4-wheel tractor which pulls a bottom loading 2-wheel trailer which is capable of carrying and depositing 28 cubic yards of material. This particular piece of equipment was manufactured by Euclid, Inc.[1] in 1961 and was sold by Empire Machinery Company (Empire) on June 27, 1972 to a Max Koepnik. Koepnik in turn sold the scraper 2 days later to Southwest-Ward Engineering, Vineyard's employer.

Prior to the accident, Vineyard had been a heavy equipment operator for approximately 15 years and for more than one year prior to the accident had been operating a scraper of approximately the same size as the Euclid Model SS–28. Vineyard had operated this particular scraper approximately 100 miles per day from the time it was purchased by his employer until the accident on July 6, 1972. According to Vine-

---

1. Euclid was acquired by the Terex Division of General Motors and both General Motors and the Terex Division of General Motors are named as defendant-appellees.

yard's deposition, this particular scraper operated in the same manner as other scrapers used by Vineyard in the past and its stability was the same as those with which he was familiar.

· On the day of the accident, Vineyard had deposited a load of fill dirt while proceeding down a steep slope. As he pulled the trailer portion of the scraper over the fill he had just deposited, the rear trailer portion of the scraper started to slip down an incline, which in turn pulled over the tractor. As the tractor overturned, Vineyard either jumped or was thrown from the scraper, resulting in serious injuries, including a crushed leg, which was subsequently amputated.

Vineyard brought an action against the manufacturer of the scraper, Euclid, and the seller, Empire. He seeks recovery against Euclid under both negligence and strict liability theories; and against Empire solely on the basis of strict liability in tort.

The evidence is uncontroverted that the scraper did not have a roll-over bar or seat belts. The absence of this roll-over protection is the defect alleged by Vineyard,[2] giving rise to the application of the doctrine of strict liability.

Empire initially filed a motion for summary judgment on April 18, 1975 on the ground that the absence of roll-over protection did not render the scraper defective and unreasonably dangerous. This motion was joined in by Euclid. Vineyard defended primarily on the legal theory that under Arizona law, it was not necessary to make a showing that a defect is unreasonably dangerous. The motions were denied at that time.

Subsequently, Vineyard's deposition was taken and on November 25, 1975, Euclid again moved for summary judgment which was joined in by Empire, urging the lack of showing of a defective condition unreasonably dangerous because the lack of roll-over bars was open and obvious. Hearing was held on this motion on December 19, 1975.

(Previously, trial had been set for January 17, 1976.) At that point, Vineyard had engaged in no discovery. On January 7, 1976, while the motions for summary judgment were pending, Vineyard for the first time propounded interrogatories which the parties stipulated need not be answered until the court had ruled on the pending motions.

The trial court granted the motions for summary judgment and Vineyard has appealed.

The main thrust of Vineyard's arguments on appeal is based on this reasoning: that the Supreme Court's decision in *Byrns v. Riddell, Inc.,* 113 Ariz. 264, 550 P.2d 1065 (1976) rejects the distinction between latent and patent defects for the purpose of imposing strict tort liability; that since the trial court allegedly relied upon this distinction as expressed in *Maas v. Dreher,* 10 Ariz.App. 520, 460 P.2d 191 (1969) and in *Morrow v. Trailmobile, Inc.,* 12 Ariz.App. 578, 473 P.2d 780 (1970) in granting summary judgment, its decision must be reversed.

■ In analyzing this contention, it is necessary to reiterate some basic principles of strict liability in tort. First, strict liability is not synonymous with absolute liability. *Lunt v. Brady Manufacturing Corp.,* 13 Ariz.App. 305, 475 P.2d 964 (1970). Thus, merely because the use of a product results in injury does not necessarily impose liability upon the manufacturer. Rather, Arizona has continued to adhere to the standards imposed by Restatement (Second) of Torts § 402(A) (1965). In this regard, Arizona has specifically rejected the California approach set forth in such cases as *Cronin v. J. B. E. Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972) and *Barker v. Lull Engineering Co., Inc.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978), that the plaintiff is relieved of the responsibility of proving a defect unreasonably dangerous. *Byrns v. Riddell, Inc., supra.*

---

**2.** In appellant's brief, the claim is made that appellants would have introduced evidence at trial that the scraper had a propensity to tip over. However, no evidence in support of this defect was before the trial court.

What the doctrine of strict liability does is to relieve the plaintiff from proving the defendant's specific acts of negligence (the proof of the defect being substituted for proof of negligence) and protects the plaintiff from defenses of notice, disclaimer and lack of privity. *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967).

However, under Restatement (Second) of Torts, § 402(A) (1965), the plaintiff is still required to prove that the product was defective, that the defect was unreasonably dangerous, and that plaintiff's injuries were proximately caused by the defect. *Rogers v. Unimac Co., Inc.*, 115 Ariz. 304, 565 P.2d 181 (1977). As previously indicated, the only defect which is alleged here is the failure to provide roll-over protection. This, if a defect, is one of design. Moreover, it is a safety design defect which only becomes operative if the scraper is turned over (a non-contemplated use but arguably a foreseeable consequence of its use). The question then becomes: Is a scraper manufactured in 1961 defective in design because it does not provide protection to its driver, if the scraper is turned over? Unfortunately, the parties have not briefed this interesting aspect of this litigation and product liability law. We therefore accept the posture of the parties in this litigation—the tacit recognition that the lack of roll-over protection is a defect and pass to the determination of whether that defect is "unreasonably dangerous."

In *Byrns v. Riddell, Inc., supra*, the Arizona Supreme Court stated several definitions for "unreasonably dangerous." Since the court ultimately determined that a jury question was raised as to whether the football helmet involved in that case contained a defect "of a type that a reasonable consumer would not contemplate" we assume that it has reaffirmed the court's adherence to the Restatement definition. That definition is:

"The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Comment (i) Restatement (Second) of Torts § 402(A) (1965).

While *Byrns* in dicta indicates that the open and obvious nature of a defect is not an absolute controlling factor in determining whether it is unreasonably dangerous, obviously, this is one of the factors to be considered. Moreover, *Byrns* indicates that "[n]o all-encompassing rule can be stated with respect to the applicability of strict liability in tort to a given set of facts."[3] In this case, the sole "defect" alleged is the lack of roll-over bars. The presence or absence of roll-over bars is immediately evident. The only danger presented by the lack of roll-over bars is if this 20-ton piece of heavy equipment should turn over. There was no evidence that this particular piece of equipment had such a propensity. The danger presented by the slight chance that this scraper would turn over and that roll-over bars would not be present to protect the driver, is not a danger "to an extent beyond that which would be contemplated by the ordinary consumer."

At the time of the hearing on the motions for summary judgment, the only evidence[4] presented to the trial court to controvert the defendants' claim that there was no factual issue concerning the "unreasonably dangerous" nature of the scraper is a letter from a consulting engineer giving his opinion of whether ". . . an employee differ[s] from an average layman in terms of what he perceives as an open and obvious hazard within a work environment," and Vineyard's affidavit and deposition.

The letter goes to the issue of whether Vineyard subjectively perceived the scraper as being "unreasonably dangerous" and has

3. *Byrns v. Riddell*, 113 Ariz. 264, 267, 550 P.2d 1065, 1068 (1976).

4. At this hearing on the motions for summary judgment, appellees' brief states that the court reminded Vineyard's counsel that Vineyard had

not sought by discovery to develop any evidence whatsoever. There is no transcript of this hearing. However, appellants' reply brief does not controvert appellees' statement.

no bearing on the condition of the scraper itself. Reading the affidavit and deposition in a light most favorable to Vineyard's position on appeal, we find that he had experienced a tipping sensation in the scraper on a prior occasion, that he had operated other kinds of heavy equipment which had roll-over protection, that most scrapers he had either operated or observed lacked roll-over protection, that there were some scrapers on the jobsite with roll-over protection, and that he would have used seat belts if a roll-over bar and seat belts had been provided on the scraper. Like the trial court, we do not find this sufficient to raise a factual issue of whether the absence of a roll-over bar on a 1961 model scraper renders it "unreasonably dangerous."

Judgment affirmed.

HAIRE and SCHROEDER, JJ., concur.