James L. EICKELBERG, Appellant,

v.

DEERE & COMPANY, Appellee.

No. 61344.

Supreme Court of Iowa.

March 21, 1979.

Steven K. Warbasse and William C. Ball of Ball & Nagle, Waterloo, for appellant.

George Lindeman of Lindeman & Yagla, Waterloo, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, ALLBEE and McGIVERIN, JJ.

ALLBEE, Justice.

Plaintiff, James L. Eickelberg, was injured when his hand was caught between the belt and sheave of a variable speed transmission on the left side of a John Deere Model 95 combine. That implement belonged to Robert Rose, whom plaintiff had hired to harvest his soybeans. At the time of the accident, plaintiff was attempting to assist Rose in making minor repairs of the machine in the field.

As originally pleaded, the lawsuit was against Deere & Co. for products liability,

based on negligence, strict liability and warranty theories, and against Rose and Darwin Larsen, the combine operator, for negligence. The claims against the latter defendants were dismissed before trial, as were the negligence and warranty counts against Deere & Co. Thus the case proceeded to trial against Deere & Co. on the single-remaining theory, strict liability in tort. The jury returned a verdict for defendant. Judgment was entered on the verdict. Plaintiff's motion for a new trial was denied, and he appealed. We consider the five issues he raises in the order in which they are argued in his brief.

■ I. Plaintiff first argues that trial court erred in instructing the jury that it had to find that the product was unreasonably dangerous in order to return a verdict for plaintiff on the strict liability theory. He cites the language from *Haumerson v. Ford Motor Co.*, 257 N.W.2d 7, 16 (Iowa 1977), *quoting Elmore v. American Motors Corp.*, 70 Cal.2d 578, 586, 75 Cal.Rptr. 652, 657, 451 P.2d 84, 89 (1969), that a bystander ought to be entitled to greater protection from defective products than a user because the bystander has no opportunity to protect himself. He also insists that the "unreasonably dangerous" element of *Restatement (Second) of Torts*, § 402A (1965) introduces an element of negligence into strict liability. He finds support for this contention in cases from other states which develop the strict liability doctrine to exclude this element: *Barker v. Lull Engineering, Inc.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978); *Cronin v. J. B. E. Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972); *Glass v. Ford Motor Co.*, 123 N.J.Super. 599, 304 A.2d 562 (1973); and *Berkebile v. Brantley Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975).

This court recently refused to eliminate the "unreasonably dangerous" element from strict liability cases where the plaintiff is a user of the product. *Aller v. Rodgers Machinery Manufacturing Co.*, 268 N.W.2d 830, 834–35 (Iowa 1978). That opinion discussed the difference between negligence and the "unreasonably danger-

ous" requirement of section 402A. While negligence requires an examination of the manufacturer's actions in designing and producing the product, the "unreasonably dangerous" element involves a determination of the consumer's reasonable expectations regarding the product's characteristics. *Aller*, 268 N.W.2d at 835; *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 69 Wis.2d 326, 332, 230 N.W.2d 794, 798–99 (1975). See also *Blevins v. Cushman Motors*, 551 S.W.2d 602, 607–08 (Mo.1977).

Some courts have excised the "unreasonably dangerous" element from section 402A, see, e. g., *Cronin*, 8 Cal.3d at 132–33, 104 Cal.Rptr. at 441, 501 P.2d at 1061–62; *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 559–60, 391 A.2d 1020, 1027 (1978), or have otherwise modified that requirement. *Seattle-First National Bank v. Tabert*, 86 Wash.2d 145, 154, 542 P.2d 774, 779 (1975) (liability imposed if a product is "not reasonably safe"). Others, however, have retained the element. Some of those retaining it have specifically rejected *Cronin*, see, e. g., *Cepeda v. Cumberland Engineering Co.*, 76 N.J. 152, 178–80, 386 A.2d 816, 829 (1978); *Vineyard v. Empire Machinery Co.*, 119 Ariz. 502, 504, 581 P.2d 1152, 1154 (Ct.App.1978); *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1362–63 (Okl.1974), while others make no mention of that case. See, e. g., *Blevins*, 551 S.W.2d at 607; *Vincer*, 69 Wis.2d at 331, 230 N.W.2d at 798. Finally, one of plaintiff's primary authorities, *Glass v. Ford Motor Co.*, 123 N.J.Super. 599, 304 A.2d 562 (1973), was specifically disapproved by the Supreme Court of New Jersey in *Cepeda*, 76 N.J. at 180, 386 A.2d at 829. We have reexamined and reconsidered the authorities involved and have determined that this court's recent announcement in *Aller* must be followed here.

Nor are we inclined to extend liability in this case because plaintiff claims to have been a bystander. Neither the case which plaintiff cites for such an extension, *Haumerson v. Ford Motor Co.*, 257 N.W.2d 7, 16 (Iowa 1977), nor the case which *Haumerson* quotes, *Elmore v. American Motors Corp.*,

70 Cal.2d 578, 586, 75 Cal.Rptr. 652, 657, 451 P.2d 84, 89 (1969), actually extend liability to bystanders beyond that to users. They merely brought liability to bystanders in line with that to users. We are not persuaded of a need to indulge in the extension which plaintiff contends for in this case. Trial court was correct in requiring the jury to find that the combine was unreasonably dangerous.

II. Plaintiff's next contention is that trial court erroneously foreclosed the introduction of evidence of similar accidents which was offered to show that the combine was unreasonably dangerous. During the discovery process, plaintiff directed an interrogatory to Deere & Co. asking whether it had received any claims alleging injuries from the belts or sheaves on its Model 95 combine. Deere & Co. responded by listing four such claims. During trial, plaintiff offered that answer as evidence to show that the belt assembly by which he was injured was unreasonably dangerous. Defendant objected that it was irrelevant and immaterial and the court sustained the objection. Plaintiff now argues that evidence of similar accidents ought to be admissible in a strict liability case on the issues of whether the product was unreasonably dangerous and whether it had a defect.

■ Such evidence is allowed in negligence cases to show a hazard and defendant's knowledge thereof. See Smith v. J. C. Penney Co., 260 Iowa 573, 578, 149 N.W.2d 794, 797 (1967); Berk v. Arendts, 254 Iowa 363, 370–71, 117 N.W.2d 905, 909 (1962). In negligence cases, there must be a showing that conditions were substantially similar and the occurrence was not too remote in time.

■ Relying upon analogies to negligence cases, several courts have held that evidence of similar accidents is admissible in actions based on strict liability. See, e. g., Wojciechowski v. Long-Airdox Division of Mormon Group, Inc., 488 F.2d 1111, 1115–16 (3d Cir. 1973); Badorek v. General Motors Corp., 11 Cal.App.3d 902, 932–34, 90 Cal.Rptr. 305, 326–27 (1970); Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 415–16, 470 P.2d 135, 139–40, 42 A.L.R.3d 769, 777 (1970); City of Franklin v. Badger Ford Truck Sales Inc., 58 Wis.2d 641, 656–57 & nn. 20, 21, 207 N.W.2d 866, 873 (1973). While substantial similarity is required, the temporal element does not apply to strict liability cases. Badorek, 11 Cal.App.3d at 933, 90 Cal.Rptr. at 326; Ginnis, 86 Nev. at 415–16, 470 P.2d at 139–40, 42 A.L.R.3d at 777. This is because knowledge or notice of a dangerous condition is not an issue in such actions.

The rule gleaned from these decisions is a salutary one, and we now recognize it as the law of this state. Recognition of this principle, however, does not benefit plaintiff. Because the question is one of relevancy and the inconvenience of trying collateral issues, admission or rejection of such evidence calls for the exercise of sound judicial discretion by the trial court. City of Franklin, 58 Wis.2d at 656–57, & n.21, 207 N.W.2d at 873; cf. Northrup v. Miles Homes, Inc., 204 N.W.2d 850, 855–56 (Iowa 1973) (evidence of similar acts to show fraud or deceit). Here there was no abuse of discretion. Two of the four claims described in the answer to the interrogatory were dissimilar to the situation from which plaintiff's injury arose. In the first, a shield, present on the combine which injured plaintiff, had been removed. In the third, the injured party was coming out from beneath the combine when the injury occurred. Plaintiff, in contrast, had been standing nearby and had caught some clothing in one of the belts.

■ The answer to the interrogatory was offered as a unit. When parts of a unit of evidence are inadmissible, failure to offer specific portions which are admissible is fatal. Englund v. Younker Brothers, Inc., 259 Iowa 48, 57–58, 142 N.W.2d 530, 535 (1966) (offer of entire lease where only portions were relevant); Olson v. Norwegian Mutual Insurance Assoc., 258 Iowa 731, 736–37, 140 N.W.2d 91, 94–95 (1966). Thus we need not determine whether a sufficient showing was made that the second and fourth claims reported in the answer arose out of substantially similar

conditions. The demonstrated dissimilarity of the first and third claims infected the entire offer, rendering it inadmissible.

■ III. The next complaint which plaintiff makes is in regard to trial court's refusal to impose sanctions against Deere & Co. for failure to make discovery. Plaintiff had directed interrogatories to defendant regarding alternative methods of shielding the belts and sheaves on the side of the combine. Several varieties of such shielding were mentioned during the pendency of the action. These included: a shield on implements going to Minnesota, added at the order of that state's Industrial Commissioner; "barn door" shields used on combines built beginning four or five years after the one involved here; a smaller variety which had been considered and rejected by Deere & Co. engineers; and a perforated screen shield, available as an option on Model 95 combines built at the time of the machine in question. Although plaintiff cites the fact that diagrams of the Minnesota shielding were not made available to him until the depositions of three Deere & Co. engineers were taken two weeks before trial, his argument seems to be directed primarily toward the late disclosure, made on the day before trial, of diagrams of the perforated screen shielding.

Plaintiff claimed prejudice in being denied the opportunity to depose Deere & Co. engineers on the shielding and in not being able to determine why the shield was optional or how much it cost. He claimed the record showed that Deere & Co. knew about the perforated screen shield at least two weeks before trial. Therefore, on the premise that the failure to answer the interrogatories was wilful, plaintiff demanded judgment against defendant or an order holding as established that the combine was unreasonably dangerous. Had trial court found a wilful failure to answer, such remedies would have been justified. *Smiley v. Twin City Beef Co.*, 236 N.W.2d 356, 360 (Iowa 1975); Iowa R.Civ.P. 134(d). But, trial court found that the delay in answering was not wilful, and that defendant had complied with the various discovery re-

quests to the best of its ability. There is support for the court's so finding. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747, 751 (1976) (per curiam). Trial court's broad discretion, *see Haumerson v. Ford Motor Co.*, 257 N.W.2d 7, 13–14 (Iowa 1977), was not abused.

IV. The penultimate issue is whether trial court erred in instructing on three elements of strict liability which, plaintiff insists, were not contested. The court gave two instructions which listed all of the elements of strict liability in tort. Included among those elements were these: that the defendant sold the product, that it was engaged in the business of selling such products, and that the product was expected to and did reach the plaintiff without substantial change in condition.

The first of these three was stipulated to orally, during trial and before the jury. The second was admitted in defendant's answer. The third, according to plaintiff, was established by an expert whose testimony was uncontradicted. Thus, plaintiff argues, none of the three elements should have been submitted to the jury.

We consider all of the instructions together. *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 425 (Iowa 1977). Instruction number 20, the fourth paragraph of which was taken from the second paragraph of Uniform Jury Instruction (Civil) 1.2, told the jury that "[e]vidence is . . . a stipulation . . . ." Trial court could well have instructed the jury that the stipulation was an admission by Deere & Co. that it had manufactured the combine. The method employed here, however, was adequate for this case.

Regarding the second of the three elements which plaintiff claims were uncontested, instruction 2 told the jury that Deere & Co. had admitted being engaged in the manufacture and sale of combines. Thus the jury was properly informed on this issue.

██ And the court was correct in instructing on the third element being discussed here. The trier of fact is not bound to accept expert testimony, even if uncontradicted, although testimony should not be arbitrarily and capriciously rejected. *Waddell v. Peet's Feeds, Inc.,* 266 N.W.2d 29, 32 (Iowa 1978); *Daboll v. Hoden,* 222 N.W.2d 727, 736 (Iowa 1974). The testimony of plaintiff's expert, even if uncontradicted, created a jury question.

V. Finally, plaintiff attacks the instructions on the basis that they overemphasized his burden of proof by unduly repeating the elements which he had to prove to establish a case of strict liability. The court, in instruction 7, defined strict liability by listing its elements. In the succeeding six instructions the court defined the various individual elements. Then, in instruction 14, the court told the jury that for plaintiff to recover he had to establish each of the elements of strict liability, and listed them again.

██ It is true, of course, that "even correct statements of the law, if repeated to the point of undue emphasis, may constitute reversible error." *Rosenau v. City of Estherville,* 199 N.W.2d 125, 133 (Iowa 1972). There was no such undue repetition here, however. The repetition was no more than what was required for a clear presentation of the issues. *See Hoyt v. Chicago, Rock Island and Pacific Railroad Co.,* 206 N.W.2d 115, 120 (Iowa 1973).

Having found no error, we affirm.

AFFIRMED.