601 P.2d 298

**Steven D. HOHLENKAMP, a minor, by and through his natural parents, Dennis W. Hohlenkamp and Sarah I. Hohlenkamp, Plaintiffs/Appellants,**

v.

**RHEEM MANUFACTURING COMPANY, a foreign corporation, Defendant/Appellee.**

**No. 2 CA–CIV 3119.**

Court of Appeals of Arizona, Division 2.

June 15, 1979.

Rehearing Denied July 3, 1979.

Review Denied Oct. 9, 1979.

Haralson, Kinerk & Morey, P. C. by Carter Morey, Tucson, for plaintiffs/appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Thomas A. McGuire and Robert E. Brown, Phoenix, for defendant/appellee.

OPINION

HATHAWAY, Judge.

In this products liability action for personal injuries, the issue on appeal is whether the trial court erred when it granted appellee-defendant a partial summary judgment because it found that "a water heater having a pilot light is not unreasonably dangerous for its intended use," despite expert testimony to the contrary.

The trial court had before it depositions, exhibits and memoranda from counsel. Viewing the record in the light most favorable to appellant, we find the following. On May 22, 1962, Steven Hohlenkamp, who was then 14 months old, was severely burned in an explosion and resulting fire in the utility/storage room located at the rear of the Hohlenkamp home. The 6' × 8' utility room had a door on the southside connecting to a screened-in porch. Against the west wall of the utility room was a gas heater, a washing machine, and the Rheem gas water heater, which appellants contend caused the explosion and fire. The utility room and porch are the only storage areas in the house. The Hohlenkamps stored Christmas decorations, tools and a gasoline

powered lawn mower in the room. A two gallon can of gasoline, used for the lawn mower, was either inside the room or just outside the door on the porch. Between 8 and 9 a. m., Steven's mother, Sarah, turned on the washing machine and went to the bedroom to make up the beds. Steven was playing on the porch. Ten or fifteen minutes later Sarah heard a "whoosh" and "the whole house shook." She ran to the porch and found Steven in flames.

According to the Tucson Fire Department "run report," the fire was ignited by the water heater. The report account included the following:

"After fire was extinguished, an open two gallon gas can was found on its side approximately three feet from the hot water heater. Rear porch and storage room was completely burned as well as contents in the same."

Fireman Valenzuela, one of the responding fire fighters, testified as to the cause of the fire:

"Q. Let me put it this way. I know you are saying the gasoline burned, but could you tell us if you investigated as to how the gasoline became ignited?

\* \* \* \* \* \*

(THE WITNESS) By gathering information partly from the neighbors and Mr. Hohlenkamp or Mrs. Hohlenkamp, and by also looking at the possible sources of ignition. That means flames or something that would ignite the gasoline. And by the fact that there was a hot water heater there at the scene, plus a can tipped over with the possibility of having gasoline or even gasoline fumes, and by the way the fire had taken a path, like I say by this charred wood which is what we normally base our investigation procedures on as to where the fire was— the initial point of the fire, we ascertained that the only possible reason for the fire was that gasoline fumes or the gasoline, itself, had reached the pilot light of the hot water heater that was there and ignited the gasoline fumes.

\* \* \* \* \* \*

Q. You testified that Mrs. Hohlenkamp or some neighbor said they heard a whoosh, which you said is consistent with the explosion of gasoline?

A. Right.

Q. Is that consistent with your finding when you checked what happened in that utility room on May 22, 1962, that there was an explosion or a whoosh which was the combustion of gasoline fumes?

A. Yes. We concluded, at that time, that was the only possible reason for the fire being started, was that there was a combination of gasoline fumes with an open pilot light.

Q. Now in order for the fire to have reached the open pilot light, something must have caused the gas to get there, is that correct?

A. Just the air. You know, gasoline fumes are heavier than air and naturally travel on the bottom of the floor."

The three theories of products strict liability—manufacturing defect, design defect, and failure to warn of an unreasonably dangerous defect—require that the defect make the product unreasonably dangerous. *Byrns v. Riddell,* 113 Ariz. 264, 550 P.2d 1065 (1976). No evidence of manufacturing defect was presented and the trial court denied the motion for summary judgment with respect to design defect, reserving leave to refile a defense motion for summary judgment should expert evidence of design defect not be forthcoming.

■ The focal point of this appeal is whether there is a genuine issue of fact that the gas water heater was unreasonably dangerous without a warning that it was operated with a constant pilot light. The absence of such a warning is uncontested. Appellee submits that the danger was known to Mr. Hohlenkamp, an automobile mechanic who should have been familiar with the volatile propensity of gasoline and the pilot light feature of the water heater, and who, nevertheless, stored the lawn

mower and the gas can in the dangerous environment.

One of the factors to be considered in determining whether a product is unreasonably dangerous is whether the danger is open and obvious. *Vineyard v. Empire Machinery Co., Inc.,* 119 Ariz. 502, 581 P.2d 1152 (App.1978). *Vineyard* involved a piece of heavy equipment that was manufactured with no seat belt and no roll bar. The court pointed out:

> "The danger presented by the slight chance that this scraper would turn over and that roll-over bars would not be present to protect the driver, is not a danger 'to an extent beyond that which would be contemplated by the ordinary consumer.'" 119 Ariz. at 505, 581 P.2d at 1155.

In the instant case, it would at first blush appear that a gas-fired appliance with a constant pilot light presents an open and obvious danger to combustibles. However, the expert testimony indicates that misapprehension as to the characteristics of volatile vapors and the danger inherent in bringing items that may exude such into an area where a pilot light burns is common. The common practice of using utility storage rooms, frequently containing water heaters, for storing items of all types, including combustibles, was also brought out. Furthermore, the flame of the pilot light is generally out of sight and the danger is hidden from view, perhaps frequently forgotten, and in the case of some individuals, not even recognized.

Two experts expressed opinions as to whether the heater should have a warning. The first, Valenzuela, who had been a fire fighter for over 17 years and had special training in fire fighting and fire prevention, testified that even though most men in Tucson would be aware that there is an open pilot light on gas water heaters, the heater should have had a warning:

> "Q. Have you ever seen a hot water heater, or do you know if hot water heaters, commonly come with any kind of sign or anything attached to the side that says, 'Be careful, there is an open pilot light here,' or not?

> A. No, but that would be an excellent idea.

> \* \* \* \* \* \*

> Q. So what you are saying is people should be warned not to put gas next to a hot water heater?

> A. Anything. Anything combustible.

> Q. Are you agreeing with me that it is not necessary to warn people that there is an open light there, and I think those are different things, an open flame?

> A. Okay. In my opinion, and I am basing this solely on my experience in the fire department and having to ___ I have fought many, many of these fires. I would almost go as far as to say it should be mandatory to put a sign on a darn hot water heater, that warns people not to store combustibles close to the hot water heater, whether it is gasoline or whether it is a clothes hamper."

The second, Dr. Vaughn Adams, Chairman of the Design Science Department and Associate Professor of Industrial Design at ASU, testified as to the probability of storage of combustibles in storage-utility room combinations. In view of the hazard being quite apparent to installers and manufacturers of appliances, he was of the opinion that controls should be designed into the system safeguarding the user or occupants of residences. He also gave the following testimony which we find pertinent:

> "A. I believe there had been previous knowledge of explosions of gas-fired hot water heaters being the primary ignition source that would have made it proper and dutiful to have warned unsuspecting users and operators, including homeowners, of the potential hazard that existed.

> \* \* \* \* \* \*

> A. I believe the accident facts as they were collected and tabulated by the National Safety Council would indicate that we had knowledge of explosions and fires caused by gas-fired appliances during the early 60's.

**538**

Q. Do you mean to suggest that Rheem Manufacturing had actual knowledge of prior explosions caused by its hot water heaters?

A. I would assume that they had."

The defectiveness or unreasonable dangerousness of a product because of failure to warn depends on the same considerations respecting harm as in the context of negligence: foreseeability, seriousness and cost of prevention. *Shell Oil Co. v. Gutierrez,* 119 Ariz. 426, 581 P.2d 271 (App.1978). The greater the danger caused by the defect the greater the restraint upon the court to foreclose adjudication of culpability. *Shell Oil Co. v. Gutierrez,* supra.

■ The testimony of Valenzuela and Professor Adams is sufficient to raise the likelihood that reasonable men may reach different conclusions on the issue of an unreasonably dangerous defect for failure to warn. *Byrns v. Riddell,* supra; *Livingston v. Citizen's Utility, Inc.,* 107 Ariz. 62, 481 P.2d 855 (1971).

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

RICHMOND, C. J., and HOWARD, J., concurring.