G. R. FISHER, Administrator, Appellee, v. B. F. ELLSTON, Appellant.

NEGLIGENCE: Acts or Omissions Constituting Negligence—Automobile Driver—Highway Intersections—Slowing Down and Signaling. It is negligence *per se* for an automobile driver to approach an intersecting highway, with his view obstructed for a distance of 200 feet or less, without doing two things, to wit: (1) slow down, and (2) give timely signal of his approach. (Sec. 1571-m18, Code Sup., 1913.)

**NEGLIGENCE:** Verdict and Findings—When Not Disturbed on Appeal. Rule recognized that a jury question is presented when the evidence is of such a character that honest minds, searching for the truth, might fairly differ on the question of negligence.

**NEGLIGENCE:** Acts or Omissions Constituting Negligence—Automobiles—Arbitrary Speed Not Authorized—Presumption. No statutory presumption of negligence arises from the speed alone of an automobile until such speed exceeds 25 miles an hour and an injury occurs; but the jury may find negligence *under a much less rate of speed* in connection with other conditions. So *held* where defendant entered upon an intersecting highway, with his view thereof obstructed, without signal or slackening of speed, though running less than 25 miles an hour. (Secs. 1571-m18 and 1571-m19, Code Sup., 1913.)

**NEGLIGENCE:** Proximate Cause—Fright of Horse—Automobile Accident. Evidence reviewed, and held to justify the jury in finding that the proximate cause of the death of deceased was the act of defendant in rapidly driving his automobile into an intersecting highway, without signal, with consequent fright and runaway of the horse behind which deceased was riding.

**HUSBAND AND WIFE:** Wrongful Death of Wife—Damages—Services as Wife or Mother—Estimating Value—Basis. The value of the services of a married woman "as a wife or mother or both" must necessarily be left to the sound discretion of the jury. Sufficient basis for the assessment of damages for her wrongful death is afforded by evidence that reveals her age, expectancy, health, physical strength, and helpfulness and disposition towards her husband and children. (Sec. 3477-a, Code Sup., 1913.)

**NEGLIGENCE:** Imputed Negligence—Husband and Wife. The negligence of a husband in operating a vehicle on a journey which related peculiarly to his own business will not be imputed to his wife, where no relation of principal and agent exists, and where the wife had no control over the vehicle and did not seek to exercise any.

*Appeal from Clarke District Court.*—T. L. MAXWELL, Judge.

SATURDAY, FEBRUARY 19, 1916.

ACTION to recover damages for personal injury resulting in death. Verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Miles & Steele* and *Temple & Temple,* for appellant.

*O. M. Slaymaker* and *V. R. McGinnis,* for appellee.

GAYNOR, J.—This action is brought by the administrator of Eva M. Fisher to recover for injuries resulting in her death. It is alleged that, on the 14th day of July, 1913, she was riding with her husband in a buggy drawn by one horse and driven by her husband; that she was traveling on a public highway; that she was met by an automobile driven by the defendant; that the horse became frightened at the automobile, became unmanageable and ran away, throwing deceased from the buggy, resulting in injuries from which she died; that the road on which deceased was traveling ran east and west and she was proceeding westward; that, just west of the point where the horse became frightened, there is a public highway running directly north, intersecting this east and west road; that this north highway does not extend south of the east and west road on which deceased was traveling; that the trouble occurred about 4 rods east of the intersection; that defendant was driving a Ford automobile, coming from the north, and running at a high and dangerous rate of speed; that, on reaching the intersection, he turned immediately east into the road on which deceased was riding; that, from both points of view, from the north road on which defendant was riding and the east and west road on which deceased was traveling, the view was obstructed, so that neither could see the other approaching the intersection; that, as defendant came from the north and approached this intersection, he gave no notice or warning of his approach, and, without doing so, turned into the east and west road; that, as defendant passed from the north road onto the east and west road on which deceased was traveling, he came rapidly, and did not stop his automobile until it was within about two rods of the horse behind which deceased was riding; that, after turning the corner, it ran directly towards the horse before stopping.

Plaintiff specified several grounds of negligence, only two of which were submitted to the jury, to wit:

1. In running the automobile upon a public highway at a high and dangerous rate of speed.

2. In not sounding the horn or giving the alarm when approaching the east and west road.

The defendant's answer was a general denial.

Upon the issues thus tendered, the cause was tried to a jury, and a verdict returned for the plaintiff, and, judgment being entered upon the verdict, defendant appeals, and urges:

1. That the evidence is wholly insufficient to justify a verdict for the plaintiff on either of the grounds of negligence submitted.

2. That the court erred in submitting to the jury the question of damages occasioned by the death of decedent, for the reason, as it is claimed, that there was no evidence offered on the part of the plaintiff on which the jury could find a verdict as to the value of decedent's services to the plaintiff as husband, or to her estate, there being no evidence as to such services or their value.

3. That the court erred in refusing instructions asked by the defendant.

4. That the court erred in submitting to the jury the question of reasonable care and prudence on the part of the defendant in the matter of speed. On this point, defendant claims that the statute fixes the rate of speed at which automobiles may be operated, a violation of which alone would be negligence.

5. That the court erred in telling the jury that the negligence of the husband, the driver of the vehicle, should not be imputed to the wife, and in saying to the jury that, in determining whether or not the deceased was guilty of contributory negligence, they should consider her own acts and conduct and all other circumstances shown in evidence, surrounding the accident and injury to her, and if from that

they found that she acted as a reasonably prudent person would act under all the circumstances, she could not be charged with contributory negligence.

Upon the first proposition contended for, we have to say that there is abundant evidence in the record from which the jury could well have found the defendant guilty of negligence, and that such negligence was the proximate cause of the catastrophe which resulted in the death of Mrs. Fisher.

Section 19 of Chapter 72 of the Acts of the Thirty-fourth General Assembly provides that a person operating or driving a motor vehicle shall, upon approaching a branch or intersecting highway, or a curve or a corner or other place in the highway where the operator's view is obstructed for a distance of 200 feet or less, shall slow down, and give a timely signal with his bell or horn or other device for signaling.

1. NEGLIGENCE: acts or omissions constituting negligence: automobile driver: highway intersections: slowing down and signaling.

This statute imposes upon one using an automobile on a public highway an affirmative duty. A failure to discharge this duty is negligence. It is made for the safety of the general traveling public, and, where injury results to one as the proximate result of such failure, he has a right of action against the wrongdoer, based upon such negligence. All negligence presupposes a duty. It may be a duty imposed upon one by law, or one arising from contract, or due to peculiar personal relationship. It may be owing to an individual or to the public generally. He who suffers harm, without fault on his part, through the omission of one charged with a duty, may recover for the injury sustained.

The evidence shows that defendant's view was obstructed for a considerable distance from a point on the north road. There is evidence that he came at a rapid rate of speed. There is evidence that he gave no signal of his approach. There is evidence to justify a jury in finding that he violated the duty imposed upon him by this statute. No good purpose would be served in reviewing this evidence.

The rule has been so frequently announced in this court that, where the evidence before the jury, upon which they are required to act, is of such a character that honest minds, searching for the truth as to the ultimate fact upon which negligence is predicated might reasonably and fairly differ as to whether the evidence establishes the ultimate fact, then it is a question for the jury, under proper instructions, and their finding is conclusive upon the court.

2. NEGLIGENCE: verdict and findings: when not disturbed on appeal.

Defendant's first contention cannot be sustained. Further than this, Section 20 of Chapter 72 of the Acts of the Thirty-fourth General Assembly provides:

"Every person operating a motor vehicle on the public highways of this state shall drive the same in a careful and prudent manner, and at a rate of speed so as not to endanger the property of another, or the life or limb of any person; provided, that a rate of speed in excess of twenty-five miles an hour shall be presumptive evidence of driving at a rate of speed which is not careful and prudent in case of injury to the person or property of another."

3. NEGLIGENCE: acts or omissions constituting negligence: automobiles: arbitrary speed not authorized: presumption.

This statute makes a speed of 25 miles an hour presumptive evidence that the vehicle was not being driven at a rate of speed which is careful and prudent. At any point on a road where injury results, conditions may arise, and do arise, where a lesser speed than that would negative the idea of care and prudence in the driving. This is manifest in the provisions of Section 19, above referred to, "where one in approaching a branch or intersecting highway, or a curve or a corner, where the operator's view is obstructed", and, in the very nature of things, the speed may be neither careful nor prudent, although less than 25 miles an hour.

Here, in this case, the defendant was coming from the north, approaching a public highway that intersected the road

on which he was driving, and extended both to the east and to the west. He had either to turn to the right or to the left, to proceed upon his journey. He entered upon this east and west road. His view was obstructed. This east and west road was open to public travel. The defendant was familiar with both roads, had traveled over them frequently. He knew of these obstructions to his view, and yet, the evidence tends to show, he swung around this corner to the east at a rate. of speed approximately 20 miles an hour, and this without any timely signal with his bell or horn or other device. He failed to discharge his legal duty, and, therefore, is rightly charged with negligence.

It is next contended that the evidence does not show that the action of the defendant was the proximate cause of the injury complained of.

4. NEGLIGENCE: proximate cause: fright of horse: automobile accident. The evidence of the husband, who was driving the horse, is to the effect that, when he discovered the automobile coming around the corner he reined in the horse; that she immediately became frightened and reared; that he reined her down; that she reared the second time, threw the front part of the buggy high in the air; that the automobile was then coming around the corner facing the horse and directly in front of the horse, about 3 rods east of the corner and about 2 rods from where the horse and buggy were; that the horse suddenly turned eastward, ran about a quarter of a mile east to a low point in the road where there was a culvert; that at that point, the wife was thrown out and received the injuries from which she died.

These facts being proven, the jury could well have found that the approach of the automobile was the proximate cause of the horse's becoming frightened and running away, and of the injury of which complaint is made in this case.

The husband was asked this question:

"When she was scared, what was the first thing she did? A. The first thing she did was to throw up her head, and

then I saw the automobile coming. I reined her across the road to the right. The defendant was then coming around the corner down the road. I saw him first just as he was making the corner. The mare must have thrown up her head and pricked up her ears just as he turned the corner. The automobile was still moving towards the horse when she made her last turn.''

The next error assigned raises the question that the court erred in submitting to the jury the question of damages occasioned by the death of decedent, without evidence as to the value of her services to the plaintiff or to her estate. Upon this point, the court said to the jury:

5. HUSBAND AND WIFE: wrongful death of wife: damages: services as wife or mother: estimating value: basis.

''Our statute in substance provides that when a married woman receives an injury caused by the negligence or wrongful act of any person, which injury results in death, her administrator may sue and recover for her estate the value of her services as a wife, . . . in such sum as the jury may deem proportionate to the injury resulting in her death, in addition to such damages as are recoverable by common law.

''There is no exact rule of law whereby damages of this character can be accurately measured. In determining such damages, much is necessarily left to the sound discretion and judgment of the jury. In awarding such damages, the jury should exercise a cool, calm and deliberate judgment, uninfluenced by sympathy, prejudice or passion, and should endeavor to arrive at such fair sum as will compensate the estate of the deceased for the injury received. And you may allow the plaintiff the value of deceased's services as a wife and mother in such sum as you may find from the evidence will compensate her estate for the injury received. In fixing this amount, the decedent's expectancy of life, which in this case is conceded to be seventeen years, as shown by the mortality tables, may be considered and taken into account, and if you find that the value of decedent's services, had she lived, would

have lessened as the years grew upon her, then this should be considered by you in fixing the amount to be allowed for her services as a wife and mother. But in no event, can you allow the plaintiff more than the amount claimed, to wit, $6,000.''

The statute referred to in this instruction reads as follows:

''When any woman receives an injury caused by the negligence or wrongful act of any person, . . . she may recover for loss of time, medical attendance and other expenses incurred as a result thereof in addition to any elements of damages recoverable by common law; and if such injury result in causing death, her administrator may sue and recover for her estate, the value of her services as a wife or mother or both in such sum as the jury may deem proportionate to the injury resulting in her death, in addition to such damages as are recoverable by common law . . . but in no event shall the amount exceed the sum of six thousand dollars.'' Ch. 163, Sec. 1, 34 G. A. (Sec. 3477-a, Supplement to the Code, 1913).

It is plain that, but for this section, the husband might have recovered damages for the loss of the services of his wife, but this section gives a right of recovery to her if she survives, and to her administrator if she dies. This practically takes from the husband, if he should elect to sue, the right to recover for these things specified in the statute. There could not be double recovery for the same wrong. This statute was re-enacted, practically, and appears in Section 3477-a, Supplemental Supplement to the Code, 1915. The only practical difference is that the amount of recovery is limited to $15,000.

There are certain elements of damage that are not susceptible of exact proof, such as pain and suffering, loss of future earnings, loss of consortium. There is no rule for admeasuring such damages. They are to be assessed in the light of all the facts and circumstances disclosed in the case, and should be such a sum as fairly and reasonably com-

pensates for the loss sustained. In this case, the evidence disclosed the age of the deceased, her physical strength, her health and her expectancy; that she was a good mother to her children and was loving to her husband; made the home attractive, and was a good housekeeper and did her own work; that her disposition was gentle and kind; that she was sympathetic and companionable. We think this furnished a sufficient basis for estimating the damages for loss of services, and no error was committed by the court in the instruction.

The next error is based on the action of the court in refusing to give certain instructions asked by the defendant. We have examined these instructions, and find no error in refusing them. In so far as they pronounced correct propositions of law and were relevant to the issues tendered, we think they were sufficiently covered by the instructions given by the court on its own motion.

The fourth ground has been covered by what has already been said, and is not vulnerable to the objection urged.

The fifth error demands some attention. After telling the jury that the plaintiff could not recover unless it was affirmatively shown that the deceased was free from any negligence on her part contributing to the injury of which complaint is made, the court said:

6. NEGLIGENCE: imputed negligence: husband and wife.

"And in this connection you are instructed that, in determining whether or not the deceased was guilty of contributory negligence, you shall consider her own acts and conduct, and all other circumstances shown in evidence surrounding the accident and injury to her, and if you find, from the preponderance of all the evidence, that she acted as a person of ordinary prudence under all the circumstances, you should find her free from contributory negligence, although you may find that her husband was guilty of negligence in the driving and management of the horse and vehicle."

The complaint is that the court withdrew from the consideration of the jury the negligence of the husband, and

said that such negligence could not be imputed to the wife. It is the general rule that, unless the parties are engaged in a joint or common enterprise, neither can be charged with the negligence of the other, and the general rule further is that the negligence of a husband in operating a vehicle will not be imputed to his wife, who is accompanying him, where no relation of principal and agent exists, and she has no control over the operation of the vehicle. Upon this point, see *Gaffney v. City of Dixon,* 157 Ill. App. 589; *Denton v. Missouri, K. & T. R. Co.,* 90 Kans. 51; *Louisville v. Zoeller,* 155 Ky. 192.

There is nothing in this case to show that the wife had any control over this vehicle or sought in any way to manage or control the horse attached. She was simply riding with her husband, who was on a journey which related peculiarly to his own business. True, she expected to visit with her son, who was in the neighborhood of her destination.

In *New York Cent. R. Co. v. Robbins,* (Ind.) 76 N. E. 804, the Supreme Court of Indiana said:

"If, in this case, the decedent's husband was negligent, a point we need not and do not decide, and the decedent is charged with the consequences of his negligence, it must be solely and alone because of that relationship. The complaint avers that the horses were driven by and were under the management and control of the husband, decedent 'having no control of her said husband and no control or management of said horses and wagon'. It is true that the husband and wife may sustain such relations to each other that the negligence of one will be imputed to the other, but there is no evidence of any such relations in this case. All that is shown is the existence of the marriage relation, and that relation alone cannot have that effect."

In *Hajsek v. Chicago, B. & Q. R. Co.,* (Neb.) 94 N. W. 609, the court had under consideration this question as to whether the negligence of the husband could be imputed to the wife. In this case, it appears that the husband and wife were on an

expedition to the village for the purpose of buying the family supplies, and it was claimed that, because of this, they should be treated as engaged in a joint enterprise, and that the negligence of one should be imputed to the other. The court said:

"Doubtless the life journey of the parties since their marriage may, in a sense, be regarded as a joint enterprise, but this fact would not be held to charge the wife with the consequences of the husband's negligence in most transactions. Why should it be so regarded in this instance?"

In *Reading v. Telfer*, (Kans.) 48 Pac. 134, the court said:

"The special facts of a case may show the wife to be the controlling spirit, the active and responsible party, and the husband an agent, or even a mere passenger; but in cases where such facts are not shown, the court must presume, in accordance with the ordinary—almost universal—experience of mankind, that the husband assumed and was allowed the responsible management of the journey."

In *Indianapolis Street Ry. Co. v. Johnson*, (Ind.) 72 N. E. 571, the court said:

"If the plaintiff was but a passive guest of her husband, riding in the vehicle with him, he having the control and management of the horse and buggy, she, under such circumstances, could not be held chargeable with his negligence."

See also *Lammers v. Great Northern R. Co.*, (Minn.) 84 N. W. 728; *Finley v. Chicago, M. & St. P. R. Co.*, (Minn.) 74 N. W. 174; *Munger v. City*, 66 Mo. App. 629; annotations and authorities cited in the case of *Charles Rebillard v. Minneapolis, St. P. & S. Ste. Marie R. Co.*, 54 L. R. A. (N. S.) B 1915, page 953.

See also *Nesbit v. Town of Garner*, 75 Iowa 314, in which the doctrine of imputed negligence is discussed and practically repudiated. In that case, it is said:

"The law will not create or presume the relation (of principal and agent) from the mere fact that he accepted the invitation of another to ride in his carriage."

In that case, the plaintiff was riding in the vehicle on the invitation of the owner, and he neither exercised nor assumed any control over the management of the team, and it was held that the negligence of the driver could not be imputed to him.

As bearing upon this question, see *Willfong v. Omaha & St. L. R. Co.*, 116 Iowa 548. See also *Carpenter v. Campbell Automobile Co.*, 159 Iowa 52.

On the whole record, we think the court did not err in its instructions to the jury upon this point.

We see no reversible error in the case, and the cause is— *Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.