Ambert Marie MADISON and Alan Lee
Madison, Appellants,

v.

Charles and Ruth COLBY, Ashworth
Plaza, Inc., and Ashworth Plaza,
Ltd., Appellees.

No. 69148.

Supreme Court of Iowa.

April 11, 1984.

Henry A. Harmon and Stephen D. Hardy of Grefe & Sidney, Des Moines, for appellants.

Ronald A. Riley and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellees.

McCORMICK, Justice.

Plaintiffs Ambert Marie Madison and Alan Lee Madison appeal from judgments entered on jury verdicts in their negligence action against defendants Charles and Ruth Colby, Ashworth Plaza, Inc., and Ashworth Plaza, Ltd. The case arose from Ambert's claim that she fell and was injured on two separate occasions in a parking lot maintained by defendants. The lot was adjacent to a West Des Moines office building where Ambert worked. She sought damages for her injuries and her husband Alan sought damages for loss of consortium. Upon submission of the case, the jury returned a verdict for $700 for Ambert on her claim and denied damages to Alan. In this appeal, plaintiffs seek reversal and a new trial based on several assignments of error. We reverse and remand.

The determinative questions are whether the trial court erred in overruling plaintiffs' hearsay objection to admissibility of a medical record and in overruling plaintiffs' objection to an instruction on the elements of Alan's consortium claim.

I. *The medical record.* Ambert's first treating physician was Dr. Burton Routman who saw her before and after her first fall in the parking lot, which occurred on January 24, 1979. In mid-1979 the doctor moved to Israel, and his testimony was not offered at trial. Defense counsel used a purported office record of Dr. Routman, however, in cross-examining Ambert and her husband.

The record was not then in evidence, and plaintiffs' counsel objected on various grounds to defense counsel's interpretations of and references to the record during cross-examination. We pass the issues whether error was preserved and whether reversible error occurred in these exchanges. We do consider these incidents as background in deciding whether it was reversible error for the trial court to overrule plaintiffs' timely hearsay objection to defendants' offer of the report.

The record was offered during the testimony of Dr. Christopher B. Hall, a Minnesota chiropractor who treated Ambert after plaintiffs' move to Minnesota in 1980. Dr. Hall testified that he obtained Dr. Rout-

man's record to assist him in treating Ambert.

■ Because Dr. Routman's office record was offered at least in part to prove the truth of the matters asserted in it, the record was hearsay. *See State v. Fingert,* 298 N.W.2d 249, 251 (Iowa 1980). In defending its admissibility, defendants contend it was correctly admitted under Iowa Code section 622.28 (1981), the business records statute in effect at the time of trial. Two problems exist with this contention.

■ First, if offered as a business record of Dr. Hall to prove assertions of Dr. Routman, exclusion would be required under the "hearsay within hearsay" or double hearsay rule explained in *In re Estate of Poulos,* 229 N.W.2d 721, 727 (Iowa 1975). This concept is now incorporated in Iowa Rule of Evidence 805. Hearsay within hearsay must separately come within an exception to the hearsay rule to be admissible. No exception that would make Dr. Routman's record admissible as part of Dr. Hall's record has been identified or demonstrated here.

Second, the foundational requisites for admissibility of the record under section 622.28 were not established. They are delineated in *State v. Fisher,* 178 N.W.2d 380, 382 (Iowa 1970). Specifically, defendants failed to show that Dr. Routman's record was made in the regular course of business at or about the time of the events recorded or that the sources of information and method of preparation were such as to indicate its trustworthiness. *Cf.* Iowa R.Evid. 803(6) (establishing present foundational requirements).

■ We find that the trial court erred in overruling plaintiffs' objections to the exhibit. We also find that the presumption of prejudice which accompanies the erroneous admission of evidence was not overcome in this case.

Much of the defense was devoted to minimizing the injuries suffered by Ambert in the two falls on defendants' property. Considerable evidence was adduced concerning other accidents for which she obtained medical care. The nature and extent of other injuries, and the care and treatment for them, became significant issues. Ambert freely acknowledged the other incidents but disputed defendants' suggestions that they were largely responsible for her damages. The office record of Dr. Routman was relied on by defendants in presenting their theory of defense and played a vital part in it before and after the document was admitted into evidence. We conclude Ambert is entitled to a new trial.

In addition, because the verdict denying Alan recovery for loss of consortium may have been based on failure of proof of damages, we are unable to find he was not prejudiced by admission of the exhibit. His damage claim was directly related to the strength of Ambert's proof concerning the seriousness of her injuries in the two falls. We therefore also reverse and remand for new trial on Alan's claim.

II. *The consortium claim.* One issue likely to recur on retrial concerns the correctness of the trial court's instruction on the elements of Alan's claim for loss of spousal consortium. Over plaintiffs' objection the court refused to include marital services as one of those elements. Plaintiffs contend the court erred in overruling their objection.

The trial court's instruction substantially conformed to the delineation of loss of consortium elements in *Acuff v. Schmit,* 248 Iowa 272, 274, 78 N.W.2d 480, 481–82 (1956). Those elements constitute the "sentimental version" of the doctrine and include "conjugal fellowship of husband and wife; and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation." *Id.,* 78 N.W.2d at 482. The *Acuff* court contrasted this version with a "material" or "practical" version which "included not only conjugal fellowship of husband and wife, but also service as a prominent, if not the dominant factor; not so much the service resulting in the performance of labor or the earning of wages, as the service

which contributed and assisted in all the relations of domestic life." *Id.,* 78 N.W.2d at 481–82.

Originally at common law a husband could recover for loss of his wife's services as part of a consortium claim. *Id.* This changed in wrongful death cases when the claim for lost services was given by a statute enacted in 1911 to the deceased wife's administrator. *See Weitl v. Moes,* 311 N.W.2d 259, 264 (Iowa 1981). A 1941 amendment to the statute gave an injured wife the same right. *Id.* The last amendment to the statute gave reciprocal rights to the husband and the husband's administrator. *See* 1965 G.A. ch. 427. The statute, which appears in the present Code as section 613.15, provides:

> In any action for damages because of the wrongful or negligent injury or death of a woman, there shall be no disabilities or restrictions, and recovery may be had on account thereof in the same manner as in cases of damage because of the wrongful or negligent injury or death of a man. In addition she, or her administrator for her estate, may recover for physician's services, nursing and hospital expense, and in the case of both women and men, such person, or the appropriate administrator, may recover the value of services and support as spouse or parent, or both, as the case may be, in such sum as the jury deems proper; provided, however, recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same.

Our cases demonstrate that the loss of services element was removed from a husband's common law action for loss of consortium because of the statute. *See, e.g., Fisher v. Ellston,* 174 Iowa 364, 372, 156 N.W. 422, 425 (1916); *Lane v. Steiniger,* 174 Iowa 317, 319, 156 N.W. 375, 376 (1916). The common law right was limited to preclude double recovery. *Id.* Thus when the court recognized a wife's common law loss of spousal consortium claim in

*Acuff,* the wife was given the same limited right as husbands then had.

Difficulty with the distinction between loss of consortium and loss of services was noted by the parties in an early case. *See Jacobson v. Fullerton,* 181 Iowa 1195, 1201, 165 N.W. 358, 359 (1917) ("Appellant argues that consortium cannot be distinguished from loss of services, and appellee concedes that the attempted distinction in some cases between loss of society and the loss of services of the wife is largely visionary."). Even under the "sentimental" version of consortium, the husband could recover for loss of his wife's aid in every aspect of their conjugal relationship. *Price v. Price,* 91 Iowa 693, 697–98, 60 N.W. 202, 203 (1894), cited with approval in *Acuff,* 248 Iowa at 274, 78 N.W.2d at 482. Yet, in seeming contradiction of that broad right, only the wife or her administrator could recover for her services as a housewife and head and "administrator of the internal affairs of her home." *See DeMoss v. Walker,* 242 Iowa 911, 914, 48 N.W.2d 811, 813 (1951).

In *Acuff* this court was persuaded by the landmark decision of *Hitaffer v. Argonne Co.,* 183 F.2d 811 (D.C.Cir.1950), *cert. denied,* 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950). In recognizing a wife's common law loss of consortium claim, the *Hitaffer* court addressed an argument that the action should not be recognized because a wife did not have a common law right to her husband's services. Statutory reforms gave women a right to the fruits of their own services, and the argument was that a consortium action was not warranted. The court rejected the argument, finding that consortium could not be divided into " 'services on the one hand, and conjugal affection, etc., on the other.' " *Id.* at 814. (quoting Lippman, *The Breakdown of Consortium,* 30 Colum.L.Rev. 651, 668 (1930)). Adopting a characterization that the separation of the elements is arbitrary and largely fictitious, the court added:

> *Consortium,* although it embraces within its ambit of meaning the wife's material services, also includes love, affection, companionship, sexual relations,

etc., all welded into a conceptualistic unity.... It is not the fact that one or the other of the elements of *consortium* is injured in a particular invasion that controls the type of action which may be brought but rather that the *consortium* as such has been injured at all.

*Id.* (emphasis in original). The court held that to avoid duplicate recovery because of an injured husband's independent right to recover for impairment of ability to support his wife, damages for loss of support should be excluded from the wife's recovery. *Id.* at 811. Unlike this court in *Acuff*, however, the *Hitaffer* court did not exclude the services element.

The consortium doctrine evolved at common law as a conceptualistic unity in this state, based on recognition that conjugal rights embraced more than a husband's ownership of his wife's labor and earnings and a wife's right of support. In 1894 this court said:

But the marriage state is not one entered into for the purpose of labor and support alone. Considerations of the highest character, as the comfort and happiness of the parties to the marriage contract, and the welfare of their children, give to each the right to the affection, companionship, and society of the other, and whoever wrongfully deprives either of that right may be held responsible. As it is a valuable property right when due the husband, it must be so regarded when due the wife.

*Price*, 91 Iowa at 697–98, 60 N.W. at 203.

As a concomitant part of this evolutionary process, the "services" element, even its statutory usage, outgrew its prior straitjacket. *See Wardlow v. City of Keokuk*, 190 N.W.2d 439, 454 (Iowa 1971) (Uhlenhopp, J., dissenting). In its original meaning the term became an "outworn fiction." *See* W. Prosser, *Handbook of The Law of Torts* § 125, at 894–95 (4th ed. 1971). The title theory of services withered away. *See* Restatement (Second) of Torts § 693 comment f (1977). As a result:

Neither spouse may today be viewed as the chattel of the other, rather each spouse commands a right to service by

the other by way of marital duty and mutual affection. The services rendered by one spouse to the other broadly [include] the general usefulness, industry and attention within the home and within the family.

*Wood v. Mobil Chemical Co.*, 50 Ill.App.3d 465, 478, 8 Ill.Dec. 701, 710, 365 N.E.2d 1087, 1096 (1977).

The tangible value of intrafamilial services is still an important factor. This state has recognized that the modern view of the mutual right of family members to the aid of other family members in the maintenance of the household is a valuable property right which is entitled to protection. *See Adams v. Deur*, 173 N.W.2d 100, 107–08 (Iowa 1969). Beyond this, as a consequence of increased awareness of the impracticability of attempting to separate the modern services concept from the elements of consortium, the loss of services element has become identified with a recovery for all of the traditional elements of common law consortium.

Despite taking a narrow view in *Acuff* of the elements of a spousal consortium claim, this court subsequently interpreted the word "services" to embrace both the practical and sentimental elements of common law consortium. This occurred first in *Wardlow* where the word was interpreted in relation to the parental right to recover "for the actual loss of services resulting from injury to or death of a minor child" under Iowa Rule of Civil Procedure 8. The court held that loss of companionship and society were proper elements of the loss of services recovery. *See* 190 N.W.2d at 448.

Subsequently the court gave the same expansive meaning to "services" in Code section 613.15. *See Iowa-Des Moines National Bank v. Schwerman Trucking Co.*, 288 N.W.2d 198, 204 (Iowa 1980); *Hankins v. Derby*, 211 N.W.2d 581, 585–86 (Iowa 1973); *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 664–65 (Iowa 1969). Thus the term "services" in rule 8 and section 613.15 embraced the elements of common law consortium.

In common law cases, however, the court nevertheless adhered to the view that the services element was not embraced within a common law loss of consortium recovery. The *Acuff* exclusion of loss of services from a spousal consortium recovery was reaffirmed in *Fuller v. Buhrow*, 292 N.W.2d 672, 675 (Iowa 1980). In *Weitl* the court recognized a child's independent common law right to recover for loss of parental consortium but limited recovery to the "intangible" elements under the *Acuff* rubric. *See* 311 N.W.2d at 265. A plurality of the court said that "services" as employed in section 613.15 should include only tangible services of a spouse or parent and would have overruled the cases giving a more expansive definition of that term.

This is how the law stood at the time of this court's decision in *Audubon-Exira Ready Mix, Inc. v. Illinois Central Gulf Railroad Co.*, 335 N.W.2d 148 (Iowa 1983). The limited definition of consortium was applicable to spousal and child common law loss of consortium actions. An expansive definition applied to rule 8 parental actions and section 613.15 loss of services claims. Duplicative, fragmented and inconsistent remedies existed.

Three categories of relationship are involved: spousal, parent-child, and child-parent. In each relationship there is the person who suffered bodily harm through the defendant's tort, an "injured" person. The other person in the relationship is the person who suffered the loss of consortium or services because of the injury, a "deprived" person.

In the spousal relationship, the deprived spouse had a common law right to recover for "sentimental" consortium until the injured spouse's death. The injured spouse had a duplicative right under section 613.15 to recover for the deprived spouse's loss of services, including consortium, until the injured spouse's death. That duplicative recovery belonged, however, to the injured spouse. If the injured spouse died, the common law gave the deprived spouse no additional recovery. Under section 613.15, however, the injured spouse's administrator could recover for the deprived spouse's post-death loss of services, including consortium. That recovery was to be distributed to the deprived spouse pursuant to section 633.336.

In the parent-child relationship, rule 8 gave a parent the right to recover for loss of consortium, including services, for the period before and after the child's death. Thus the deprived parent had both authority to sue and the right to the recovery of the entire loss.

In the child-parent relationship, the deprived child had a common law right to recover for "sentimental" consortium until the injured parent's death. The injured parent had a duplicative right under section 613.15 to recover for the deprived child's loss of services, including consortium, until the injured parent's death. That duplicative recovery belonged, however, to the injured parent. If the injured parent died, the common law gave the child no additional recovery. Under section 613.15, however, the injured parent's administrator could recover for the deprived child's post-death loss of services, including consortium. That recovery was to be distributed to the child pursuant to section 633.336.

Thus, the authority to bring the action and recovery belonged to the deprived spouse rather than the injured person in the common law action for loss of consortium. In rule 8 claims the deprived parent had both the authority to sue and right to the recovery. Authority to sue and recovery belonged to the deprived child in the child's action for loss of parental consortium. Authority to sue for lost services and the recovery belonged to the injured person rather than the deprived spouse or child in the action under section 613.15. If the person died, the only further recovery could be made under rule 8 in the case of death of a child and section 613.15 in the case of death of a spouse or parent. Authority to sue under section 613.15 passed to the administrator but, under section 633.336, the recovery was to be apportioned to the spouse and children of the decedent in accordance with their loss.

In *Audubon-Exira* the court sought to meld the common law, rule 8 and statutory remedies into a more coherent system. The case involved common law loss of consortium claims brought by the spouse and minor child of a man killed in a collision with a train. The claims were joined with an administrator's wrongful death action. Upon the railroad's motion, the trial court dismissed the claims by the spouse and child, and this court affirmed. 335 N.W.2d at 149. In the course of the decision, we held, in relevant part:

1. Contrary to the plurality view in *Weitl*, the term "services" in section 613.15 includes both the tangible and intangible elements of consortium. *Id.* at 151.

2. "Services" in section 613.15 includes a child's loss of parental consortium without regard to whether the parent is injured or killed. *Id.* at 152. When the parent brings the statutory action, the recovery belongs to the child just as it does pursuant to section 633.336 when the administrator brings the action. *Id.* To avoid duplication, the child's common law action recognized in *Weitl* is abrogated. *Id.* In addition, the child's damages are not limited to the child's minority. *Id.*

3. "Services" in section 613.15 also includes a spouse's loss of spousal consortium without regard to whether the injured spouse is injured or killed. Cases holding to the contrary, such as *Wilson v. Iowa Power & Light Co.*, 280 N.W.2d 372, 373 (Iowa 1979), are overruled. 335 N.W.2d at 152. As with the child's loss, the spouse's statutory loss of services recovery includes both the tangible and intangible consortium elements. *Id.*

4. The spouse retains an independent common law claim for pre-death loss of consortium. Under section 613.15, the claim for post-death loss of services, including consortium, passes to the administrator. *Id.* at 153. In each event the claim is of the same nature and the recovery goes to the spouse who suffered the loss. *Id.* n. 2.

The common law definition of consortium has thus come full circle. The division of elements described as visionary in *Jacobson* and as arbitrary and largely fictitious in *Hitaffer* has been rejected. The definition of consortium adopted in *Acuff* has been expanded to embrace both the tangible and intangible elements. It means the same thing as "services" in section 613.15.

This leaves an issue, involved in the present case, concerning the effect of section 613.15 which authorizes the injured person to recover "the value of services and support as spouse or parent" and bars recovery of those elements "by the spouse and children, as such, if any person who, or whose administrator, is entitled to recover same." This provision originated as a measure to ameliorate the harshness of the common law which allowed recovery to a husband for loss of consortium but denied a reciprocal right to the wife. The preclusive language obviously is intended to prevent a double recovery. We do not believe that in stepping in to modify the harshness of the common law by enacting section 613.15 the legislature intended to prevent the courts from taking consistent additional steps to improve and develop the common law. *See Goetzman v. Wichern*, 327 N.W.2d 742, 749 (Iowa 1982).

The parallel expansion of consortium rights at common law and recovery rights for loss of services under section 613.15 has produced a merger of those concepts. It has not, however, produced an identical remedy. Common law awards the damages to the spouse who suffers the loss. When recovery is made by the injured person, the statute would not.

We believe the General Assembly has manifested its intention that the loss of consortium recovery should be awarded, as at common law and under rule 8, to the person who suffered the loss. This intent is reflected in the amendment to section 633.336 ordering the recovery to be apportioned in death cases to the surviving spouse and children. In making this change the legislature responded to a concern expressed by this court that those who suffer the loss should receive the statutory

recovery. *See, e.g., Egan v. Naylor,* 208 N.W.2d 915, 918 (Iowa 1973). Considering this evidence of intent and the relevant common law and statutory history, we believe the statutory bar against double recovery is not intended to preempt the common law action of the spouse who suffers the loss. We therefore reiterate, as we held in *Audubon-Exira,* that "the claim belongs to the spouse of an injured person but belongs to the administrator of a deceased person." *See* 335 N.W.2d at 153 n. 2. The deprived spouse, not the injured person, has the right to sue for and recover for the pre-death loss of consortium.

This interpretation does not affect the separate and independent right of the injured person to recover for loss of support, as distinguished from loss of services. Recovery for the support element is intended to replenish the family exchequer and plainly belongs to the injured person under the statute until the injured person's death.

As a result of our holding in *Audubon-Exira* and this case, all loss of consortium recoveries, whether pursuant to common law, rule 8 or section 613.15, go to the person who incurred the loss. In each instance recovery is for tangible and intangible elements as a unified whole. Furthermore, only one recovery of consortium damages is allowed. The right of recovery in each relationship category can be charted as follows:

| RELATIONSHIP | PRE-DEATH LOSS CLAIM | POST-DEATH LOSS CLAIM |
| --- | --- | --- |
| Spousal | Deprived spouse | Administrator (recovery for deprived spouse) |
| Parent-child | Deprived parent | Deprived parent |
| Child-parent | Injured parent (recovery for deprived child) | Administrator (recovery for deprived child) |

As a practical matter, this interpretation nullifies an injured person's right under section 613.15 to recover personally for a spouse or child's loss of consortium, but we believe this result is demanded by the overriding legislative intent, the spirit of the statute, and the historical interplay between the common law and the statute.

■ To assure further against double recovery, it is desirable that consortium actions be joined with the action for the injury or death of the injured person. In some jurisdictions joinder is mandatory while in others it is required when feasible. *See Weitl,* 311 N.W.2d at 268. Based on the considerations explored in *Weitl,* we hold that consortium claims must be joined with the injured person's or administrator's action whenever feasible. If brought separately, the burden will be on the consortium claimant to show joinder was not feasible. *See id.* at 270.

■ In the present case, Alan asserted his independent claim for loss of consortium with Ambert's action. Over timely objection, the trial court refused to include the tangible loss of services element in its instruction on Alan's damages. Upon retrial that element should be included in the instruction.

III. *Other issues upon remand.* We briefly address two other issues that may recur on remand. One concerns rulings relating to admissibility of evidence of other falls on the parking lot and letters from Ambert's employer to defendants' manager about the incidents and danger. The second issue concerns a ruling permitting defense counsel to withdraw certain objections and statements he made during plaintiffs' deposition of defendants' manager.

■ As to the first issue, "evidence of former accidents at a place is admissible to show its dangerous character and knowledge thereof if conditions are substantially

similar or comparable and they are not too remote." *Smith v. J.C. Penney Co.*, 260 Iowa 573, 578, 149 N.W.2d 794, 797 (1967). The determination of similarity of conditions and timeliness involves relevancy and is vested in trial court discretion. *See Schuller v. Hy-Vee Food Stores, Inc.*, 328 N.W.2d 328, 330–31 (Iowa 1982). Evidence of a particular fall by another person was excluded on the ground of remoteness in this case. The person's fall was subsequent to Ambert's first fall and in a different winter season than Ambert's second fall. We find no abuse of discretion in the court's ruling.

 One of the letters was excluded on remoteness grounds, and we find no abuse of discretion in that ruling. Another letter, written prior to the first fall, was excised to exclude hearsay, and was then admitted. We find no error in the hearsay determination.

 As to the second issue, plaintiffs' counsel was prevented by the court from reading to the jury objections made by defense counsel during the taking by plaintiffs of defendants' manager's deposition when the objections were withdrawn at trial by defense counsel. Plaintiffs' purpose was to show that the manager's testimony was improperly influenced by statements of counsel during the course of his objections. Ordinarily withdrawal of objections is a matter of right because they are addressed only to the court. *See Lessenhop v. Norton*, 261 Iowa 44, 53, 153 N.W.2d 107, 112–13 (1967). Although there is arguable merit in the position urged by plaintiffs in this case, we find no abuse of discretion in the court's ruling.

Plaintiffs' other complaints concern matters not likely to recur upon retrial, and we do not address them.

REVERSED AND REMANDED.

All justices concur except CARTER, J., UHLENHOPP, P.J., and McGIVERIN and WOLLE, JJ., who concur specially.

CARTER, Justice (concurring specially).

I concur specially in the result and in all of the majority opinion except Division II. With respect to the issue of spousal consortium discussed in Division II, I disagree with both the result and the rationale.

The instructions which the trial court gave to the jury applied the measure of recovery which we approved in *Acuff v. Schmit*, 248 Iowa 272, 274, 78 N.W.2d 480, 481–82 (1956) and have continued to follow since that time. *Acuff* approved the so-called "sentimental version" of consortium loss limiting recovery to the intangible benefits of company, cooperation, and affection in a marital relationship. It viewed the spousal consortium claim as arising under the common law, and our subsequent decisions in *Fuller v. Buhrow*, 292 N.W.2d 672, 675 (Iowa 1980) and *Weitl v. Moes*, 311 N.W.2d 259, 262 (Iowa 1981) continued to treat it as such and in no way intimated that the right of recovery of the deprived spouse was in any way related to or affected by the statutory recovery granted to the injured spouse by section 613.15. Since the decision in *Acuff*, there has been no serious suggestion in our cases that the measure of recovery approved therein should be reexamined.

To the extent that appellants in the present case ask for such reexamination, I favor continuing to adhere to the measure of recovery established in *Acuff* for the reasons stated in that opinion. Moreover, if the measure of recovery by the deprived spouse is to be enlarged, I submit that this should be accomplished by relying on common-law principles rather than invoking a statute which by its express language is made inapplicable to claims of a deprived spouse or child.

The majority suggests that some nexus between the claim of the deprived spouse and section 613.15 has been supplied by our decision in *Audubon-Exira Ready Mix, Inc. v. Illinois Central Gulf Railroad Co.*, 335 N.W.2d 148 (Iowa 1983). I disagree with that suggestion. The main thrust of our decision in *Audubon-Exira* was to offer a consistent definition of the term "ser-

vices" as used in Iowa Code section 613.15. The significant portion of that statute for purposes of our present discussion provides:

> [I]n the case of both women and men, *such person,* or the appropriate administrator, *may recover the value of services* and support *as spouse or parent, or both,* as the case may be, in such sum as the jury deems proper; provided, however, *recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same.*

(emphasis added). Although our decision in *Audubon-Exira* involved application of this statute to a wrongful death claim, the implications of that opinion spill over into the area of personal injury claims. This is because the statute speaks to the matter of damages recoverable in situations involving both injury and death.

The recovery permitted under section 613.15 is the value of "services and support *as* spouse or parent," rather than services and support *of* spouse or parent. The clear implication of this language is that the recovery for services "as a spouse" under section 613.15 belongs the injured party and not to the spouse. Any doubt as to whether that is the intent of the statute is removed by its final proviso that:

> recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same.

Still further indication that the recovery for loss of services and support under section 613.15 belongs to the injured party is the fact that for a period of 11 years following the enactment of that statute in its present form, any recovery by a personal representative for loss of services and support was distributed as personal property of the estate. Because wrongful death actions in this state are posited on a statutory preservation of the decedent's cause of action, *see, e.g., Egan v. Naylor,* 208 N.W.2d 915, 917 (Iowa 1973); *Wendelin v. Russell,* 259 Iowa 1152, 1156, 147 N.W.2d 188, 190 (1966), this would not have been possible if such claims did not belong to the injured party.

In 1976, the legislature amended Iowa Code section 633.336 so as to provide that the recovery under section 613.15 by the personal representative of a decedent for the value of services and support shall be set aside by the court for the benefit of the surviving spouse and children. 1976 Iowa Acts ch. 1227, § 4. I cannot agree that this amendment shifted the ultimate right of recovery under the statute from the injured party to the expectant recipients of the lost services and support. As we held in *Wilson v. Iowa Power & Light Co.,* 280 N.W.2d 372, 374 (Iowa 1979), that amendment merely provides how the deceased person's enlarged right of recovery under the survival statute (Iowa Code section 611.20) for those elements of damage shall be distributed by the personal representative in the event they are recovered by the decedent's estate. In *Wilson,* we stated:

> Nothing in the amendment purports to change section 611.20 which we have said gives a wrongful death action its survivorship character. The elements of recovery are the same as before the amendment.... All that is changed is the distribution of damages.... The manner in which damages are distributed does not change the derivative nature of the action.

As a result of this conclusion, we held in *Wilson* that the entire wrongful death claim of the personal representative under section 613.15, including that portion involving loss of services and support, is subject to the defense of contributory negligence on the part of the decedent.

In *Fuller v. Buhrow,* 292 N.W.2d at 675, we continued to adhere to the view that the right of the spouse of the injured party to bring that person's own claim for loss of consortium exists outside of section 613.15, and, unlike the injured party's recovery under the statute, is not subject to the defense of contributory negligence on the part of the injured party. We also reaf-

firmed in *Fuller v. Buhrow* that while the meaning of "services" of a child for which recovery is permitted under Iowa Rule of Civil Procedure 8 is derived from section 613.15, those "services" embraced in a spouse's independent claim for loss of consortium are more limited and involve only intangibles. *Id.* at 675–76.

In *Audubon-Exira,* we approved recovery for the post-death loss of the intangible elements of spousal and parental consortium as an element of "services" under section 613.15. Nothing in our holding purports, however, to change the measure of recovery for loss of spousal consortium prior to the injured party's death or to suggest that it depends on section 613.15.

In invoking section 613.15 to enlarge the right of recovery of the deprived spouse, the majority gratuitously nullifies the right of recovery by the injured spouse which that statute expressly grants. In addition, the majority gratuitously issues an advisory opinion on the scope of rule 8 of the Iowa Rules of Civil Procedure even though that rule is in no way involved in the present case. Rather than developing new rules which affect the rights of persons who are not parties to this litigation and in which the present parties have no interest, I would decide this case solely on the spousal consortium claims involved in this litigation. I would treat them as common-law claims and adhere to the *Acuff* measure of recovery.

UHLENHOPP, P.J., and McGIVERIN and WOLLE, JJ., join this special concurrence.