Richard OBERREUTER, Violet Oberreuter, Thomas Oberreuter and Todd Oberreuter, Plaintiffs-Appellants,

v.

ORION INDUSTRIES, INC., d/b/a Antenna Specialists Company; Mid-State Distributing Company; Business Radio Sales and Service, Inc.; and Benton County Electric Cooperative Association, Defendants-Appellees.

No. 85–55.

Court of Appeals of Iowa.

Oct. 22, 1986.

**208**

Mary K. Hoefer, of the Tom Riley Law Firm, Cedar Rapids, for plaintiffs-appellants.

Raymond R. Stefani and Richard A. Stefani, of Gray, Stefani & Mitvalsky, Cedar Rapids, for defendant-appellee Orion Industries.

Richard G. Blane II and John A. McClintock, of Hansen, McClintock & Riley, and John E. Orrell & W.N. Bump, Des Moines, for defendant-appellee Mid-State.

Robert C. Tilden, James A. Gerk, Gregory M. Lederer and Daid A. Hacker, of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for defendant-appellee BCECA.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

SACKETT, Judge.

Richard Oberreuter and his sons, Thomas and Todd, were removing a C.B. radio base antenna from their house when it came into contact with an uninsulated power line carrying electricity to their farm buildings. Richard and Thomas were injured.

The 15–foot aluminum base station antenna was attached atop a 25–foot steel water pipe which was fastened to the north eave of the Oberreuter home. The antenna was installed by plaintiffs during the winter of 1974–75. The antenna was purchased from I–O–TEK, which was owned by Gerald Michel at the time of the sale. Subsequently Michel sold I–O–TEK to Orville Stevens. The power lines involved in the accident were installed on plaintiffs' property at their request in October, 1973.

The Oberreuter family filed the present action against Orion Industries, Inc., the manufacturer of the antenna; Mid-State Distributing Company and Business Radio Sales and Service, the alleged wholesale distributors of the antenna; and Benton County Electric Cooperative Association (BCECA), the rural electric cooperative which had installed the power line on plaintiffs' property.

Richard and Thomas Oberreuter sought damages for their personal injuries. Todd Oberreuter, who witnessed the accident, sought damages for negligent infliction of emotional distress. Violet Oberreuter, Richard's wife, sought damages for loss of consortium. Her claim for negligent infliction of emotional distress was dismissed and the dismissal affirmed on appeal because she was not a witness or bystander to the accident. *See Oberreuter v. Orion Industries, Inc.,* 342 N.W.2d 492 (Iowa 1984).

The plaintiffs asserted a product liability claim against manufacturer Orion and alleged wholesalers Mid-State and Business Radio for failure to warn of the danger of electrical shock if the antenna were used near an electrical line. The plaintiffs asserted BCECA was negligent in installing an uninsulated power line, in locating the power line too close to plaintiffs' house and in failing to warn plaintiffs of possible dangers from the presence of an uninsulated power line situated that close to plaintiffs' house.

On the first day of trial plaintiffs dismissed their claims against Business Radio. At the close of evidence, the trial court entered a directed verdict in favor of Mid-State, the alleged distributor. The trial court held there was insufficient evidence to establish that Mid-State had supplied the antenna in question to the retailer from whom the plaintiffs had purchased it. The balance of the case went to the jury, which returned a verdict for the remaining defendants finding defendants were not negligent and finding Orion was not liable under strict liability theory. This appeal followed.

**I.**

Our scope of review on actions at law is on assigned error only. Iowa R.App.P. 4. A jury verdict is binding upon this court

unless the record lacks substantial evidence. Iowa R.App.P. 14(f)(1); *State v. Blair*, 347 N.W.2d 416, 419 (Iowa 1984). The trial court decision will be upheld if any proper ground appears in the record. *Blair*, 347 N.W.2d at 420; *Williamson v. Casey*, 220 N.W.2d 638, 639 (Iowa 1974).

## II.

Plaintiffs contend the trial court erred in granting a directed verdict dismissing Mid-State at the close of evidence on the ground plaintiffs had not produced sufficient evidence to establish Mid-State, rather than another wholesaler, had supplied the antenna.

 In determining whether a jury question was engendered when a party seeks a directed verdict we apply the same principles as the trial court. We view the evidence in the light most favorable to the nonmoving party, regardless of whether such evidence is contradicted, to determine if reasonable minds could differ on the issue. *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443, 444 (Iowa App. 1984). If reasonable minds can differ on the issue, it is one for the jury. *Mid-Country Meats v. Woodruff-Evans Construction*, 334 N.W.2d 332, 335 (Iowa App.1983).

 A directed verdict is appropriate in cases where each element of the claim is not supported by substantial evidence. *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986). In addition, any issue without evidentiary support should not be submitted to the jury for determination. *Dutcher v. Lewis*, 260 N.W.2d 404, 406 (Iowa 1977). A mere scintilla of evidence is not sufficient to require denial of a motion for directed verdict. *Petersen v. Farmers Casualty Co.*, 226 N.W.2d 226, 232 (Iowa 1975). The trial court is vested with considerable discretion in determining whether evidence is sufficient to submit it to the jury. *Business Ventures, Inc. v. Iowa City*, 234 N.W.2d 376, 383 (Iowa 1975).

Plaintiffs assert there was substantial evidence Mid-State was the distributor of the antenna in question. Plaintiffs contend there was evidence that only two distributors supplied Orion antennas to I–O–TEK; that Michel testified Mid-State supplied 90 percent of those antennas; and that the records of the other distributor, Business Radio, gave no indication it had supplied the antenna in question to I–O–TEK. However, there is no *direct* evidence Mid-State distributed the antenna involved in the accident. Plaintiffs admitted all the evidence was circumstantial and that direct evidence was unavailable since relevant Mid-State records had been destroyed some time prior to the accident.

 In Iowa, circumstantial evidence may be sufficient to engender a jury question. *Schermer v. Muller*, 380 N.W.2d 684, 689 (Iowa 1986). However, circumstantial evidence is insufficient to engender a jury question if it merely suggests "a possibility of negligence or shows negligence 'is in the air.'" *Id.* The plaintiff has the burden to establish that injuries were proximately caused by the negligence of an identified defendant. *Id.*

Plaintiffs state in their brief the following "conclusions seem clear" even if supported by only circumstantial evidence:

> Oberreuter purchased the antenna from I–O–TEK. I–O–TEK obtained most of its antennas from Mid-State and a small percentage of those antennas from Business Radio Sales. The owner of Business Radio Sales stated categorically that he had not provided I–O–TEK with this particular antenna. Consequently, the conclusion seems obvious that the antenna involved in this accident came from Mid-State Distributing.

In addition, plaintiffs argue the circumstantial evidence was substantial enough to engender a jury question because I–O–TEK owner Steven's testimony on cross-examination "is the only evidence that Mid-State did not distribute the antenna."

 However, plaintiffs' evidence Mid-State distributed the antenna is all based on negative inferences. Plaintiffs contend since there is no positive evidence anyone else distributed the antenna it is

therefore proper to conclude Mid-State distributed it. Negative inferences do not necessarily satisfy the burden of positive proof. In the instant case, we find plaintiffs did not produce even a scintilla of positive proof Mid-State distributed the antenna. In addition, on cross-examination Michel, I–O–TEK owner at the time plaintiff purchased the antenna, negated the inferences which formed the basis of plaintiffs' evidence against Mid-State. Michel testified he did not recall how many distributors he purchased antennas from at the time plaintiffs purchased their antenna. Michel also testified he generally purchased antennas from several distributors, not just the two distributors plaintiffs named in their action, and he testified he was not certain what percentage of the antennas he purchased from Mid-State. Moreover, Michel testified on cross-examination he commingled the antenna inventory and had no records showing either a purchase from Mid-State at the time in question or a sale to plaintiffs. There were only records of purchases from Mid-State *after* the date of sale claimed by plaintiffs.

We agree with the trial court these facts taken as a whole do not rise above the level of mere speculation or conjecture. *See Reimer*, 217 Iowa 337, 381, 251 N.W. 863, 865 (1933). We also agree with the trial court that plaintiffs' evidence Mid-State distributed the antenna in question is not substantial and the trial court was correct in sustaining Mid-State's motion for a directed verdict.

### III.

Plaintiffs next contend the trial court erred by excluding evidence of (1) safety standards promulgated by the Consumer Product Safety Commission for warnings on C.B. antennas; and (2) another allegedly similar accident in which a C.B. antenna had come into contact with a power line installed by BCECA.

█ The trial court has wide discretion in ruling on the admissibility of evidence. *Carter v. Wiese Corp.*, 360 N.W.2d 122, 130–31 (Iowa App.1984). The trial court's decisions will not be disturbed unless there is a clear and prejudicial abuse of discretion. *Id.*

**A. Safety Standards.** Prior to trial Orion filed a motion in limine seeking to prevent Consumer Product Safety Commission standards enacted in 1978 from being admitted at trial. The 1978 standards required that warnings be placed on all antennas manufactured *after* February 28, 1978. Plaintiffs had purchased their antenna in 1974. Thus, plaintiffs' antenna was manufactured at least four years prior to the 1978 manufacturing standards.

The trial court sustained Orion's motion in limine stating the promulgation of standards four years after manufacture was not relevant to the issues in the instant case. The trial court based its decision on *Aller v. Rodgers Machinery Manufacturing Co.*, 268 N.W.2d 830 (Iowa 1978). In *Aller*, a strict liability suit against the manufacturer of a saw for injuries sustained by plaintiff, the Iowa Supreme Court held that exhibits consisting of OSHA standards promulgated *after* the sale of the machine in question were "clearly irrelevant" and inadmissible. *Aller*, 268 N.W.2d at 841. *See Rice v. James Hanrahan & Sons*, 20 Mass.App. 701, 482 N.E.2d 833 (1985) (government safety regulations banning sale of foam insulation, promulgated after sale of product to plaintiffs, were inadmissible); *Cover v. Cohen*, 61 N.Y.2d 261, 473 N.Y.S.2d 378, 461 N.E.2d 864 (1984) (federal motor vehicle standard post-dating manufacture of car sold to plaintiffs but pre-dating accident was inadmissible as irrelevant and clearly prejudicial pursuant to the analogous rule that data not available at time of manufacture are not admissible in such case); *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979) (no error in trial court's exclusion of safety standard, effective subsequent to sale of product to plaintiff, in defective design case since under analogous rule that subsequently enacted regulations cannot retroactively establish duty of care owed at time of accident).

Plaintiffs argue the safety standards were relevant on the issue of "defectiveness of the product." *See Dambacher v. Mallis,* 336 Pa.Super. 22, 485 A.2d 408, 426 (1984) (inadequate warning products liability cases are characterized as a kind of defective design case). Plaintiffs allege that the very existence of safety regulations requiring warnings on C.B. antennas indicate that an antenna *manufactured* without such warning label is defective. Thus, the antenna was defective when it was *sold* to plaintiffs.

However, plaintiffs' argument places it squarely within the purview of *Aller* and other defective design cases. *See Daberko v. Heil, Co.,* 681 F.2d 445 (5th Cir.1982) (manufacturer not strictly liable for injuries as a matter of law when truck redesigned *after sale* to plaintiff). The plaintiff in *Aller* also alleged the product was defective when manufactured and sold. We therefore reject plaintiffs' argument the instant case is distinguishable from *Aller.*

We determine the trial court was correct by refusing to admit the 1978 Consumer Product Safety Commission Standards.

**B. Similar Accident.** During the testimony of BCECA employee Melbert Beiber, who determined where the power line was to be located on plaintiffs' property, plaintiffs attempted to introduce evidence BCECA officials discussed reports of an accident which occurred when someone removing some kind of antenna was killed after bringing the antenna into contact with a live power line. Allegedly that accident occurred prior to the accident in which plaintiffs were injured. BCECA objected to admission of evidence regarding the prior accident. The trial court sustained BCECA's objection. The trial court found the evidence was irrelevant, inadmissible under Iowa R.Evid. 403 and inadmissible under *Eickelberg v. Deere & Co.,* 276 N.W.2d 442 (Iowa 1979).

Evidence of similar accidents is admissible in negligence cases to show a hazard and knowledge thereof. *Madison*

*v. Colby,* 348 N.W.2d 202, 210 (Iowa 1984); *Eickelberg,* 276 N.W.2d at 442. Former accidents are admissible only if conditions are "substantially similar" or comparable and not too remote. *Madison,* 348 N.W.2d at 210. Determination of similarity of conditions and timeliness involves relevancy and the inconvenience of trying collateral issues and is therefore vested in trial court discretion. *Id.* The trial court abuses its discretion only if its decision to exclude similar accident evidence is based on unreasonable grounds. *Rowen v. LaMars Mutual Insurance Co. of Iowa,* 357 N.W.2d 579, 583 (Iowa 1984).

The person in the alleged "similar accident" was killed when he touched an antenna with a live power line installed by BCECA. In their brief plaintiffs argue such evidence should not be excluded merely because the resulting injuries were not of the same severity:

[I]f a hazardous condition of a sidewalk caused one person to fracture a leg and a second person to suffer a concussion, the difference in their respective injuries is irrelevant.

Plaintiffs also cite *Greyhound Lines, Inc. v. Miller,* 402 F.2d 134 (8th Cir.1968), as supporting its contention similar accident evidence should have been admitted.

In *Greyhound,* however, the court held evidence of prior accidents on the *same* premises was relevant to show the owner's knowledge of the dangerous conditions. *Greyhound,* 402 F.2d at 139 (citing McCormick, Evidence § 167, pp. 351–352 (1954)). The evidence which plaintiffs sought to have admitted involved an accident at some undisclosed site. Defendants are correct that Iowa cases in which evidence of similar accidents was admissible involved accidents *at the same location* as plaintiffs' injury. *See Madison,* 348 N.W.2d at 209–10. *Schuller v. Hy-Vee Food Stores, Inc.,* 328 N.W.2d 328, 330 (Iowa 1982); *Eickelberg,* 276 N.W.2d at 445. In addition, plaintiffs did not show the alleged similar accidents even involved another C.B. antenna or an antenna manufactured by Orion. Beiber testified he was

not sure whether the accident involved a C.B. or television antenna. Plaintiffs also did not show the two accidents occurred under similar weather conditions, same time of year or the same factual situation of removing an antenna. *Madison*, 348 N.W.2d at 210. As such, plaintiffs failed to show the two accidents were substantially similar. We therefore agree with the trial court plaintiffs' evidence of an alleged similar accident was too remote and was properly ruled inadmissible on relevancy grounds.

We therefore reject plaintiffs' contentions on appeal and affirm the trial court on all counts.

AFFIRMED.